Kevin A. BROWN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–325.

United States Court of Veterans Appeals.

Argued July 15, 1993.

Decided Aug. 16, 1993.

As Amended Aug. 30, 1993.

Joseph A. Violante, Washington, DC, for the appellant.

Ralph G. Davis, with whom Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Kevin A. Brown, appeals a November 13, 1991, Board of Veterans' Appeals (BVA or Board) decision affirming a reduction, from 30% to 10%, in the veteran's service-connected disability rating for asthma. *Kevin A. Brown*, BVA 91–36782 (Nov. 13, 1991). After the parties had filed separate motions for summary disposition, the Court on October 30, 1992, denied those motions and ordered the parties to file briefs addressing, inter alia, the applicability of 38 C.F.R. § 3.344 (1992), regarding the criteria governing reductions in certain service-connected disability ratings. The parties subsequently filed briefs, and the Court heard oral argument on July 15, 1993. The appellant seeks reversal of the BVA decision and reinstatement of his previous 30% rating. The Secretary of Veterans Affairs (Secretary) urges affirmance of the BVA decision but conceded at oral argument that remand for readjudication may be appropriate in light of deficiencies in the Board's statement of the reasons or bases for its decision. The Court will reverse the Board's decision and remand the matter for reinstatement of the 30% rating.

## I. Background

The veteran served on active duty from December 20, 1982, to February 27, 1986. R. at 2. In May 1986, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) awarded the veteran service connection for asthma, rated at 10% disabling effective February

28, 1986. R. at 2. In that decision, the RO stated that the veteran had been diagnosed with asthma and started on medication in 1984 while on active duty, and that "his pattern of asthma is not suggestive of any particular event and usually with an inhaler or occasionally some tablets it is able to come under control". R. at 2.

A February 1987 VA X ray showed "hyperlucency of the lungs", but that "the lung fields are unremarkable". R. at 3. The report of a February 1987 VA special cardiopulmonary examination stated, under "history", that the veteran's asthma "was not improved"; that the veteran had wheezed at night intermittently (about once a week) in winter and consistently in summer; that he was taking several types of medication, including two different inhalers; that his wheezing attacks were "not as severe as before he came to Milwaukee" (the previous summer); that he was limited in making fast movement or running and did not play sports; that he would get tired from walking two blocks or climbing two flights of stairs; that he smoked half a pack of cigarettes a day; and that he had not missed any time from work in the last three months. R. at 7. On the report of the physical examination at that time, the VA examining physician found "no respiratory distress", "no wheezing, rhonchi, or rales at both lungs", and good air exchange, and diagnosed "bronchial asthma, allergies to inhalants, under treatment, periodically symptomatic". R. at 8.

In an April 1987 decision, the VARO increased the veteran's rating to 30%, retroactive to February 28, 1986. R. at 9–10. Based on the February 1987 VA cardiopulmonary examination, the RO concluded: "Considering the amount of medication necessary to control bronchial asthma and continuous outpatient treatment, [the] veteran's service connected bronchial asthma warrants a 30% evaluation and is considered to be of this severity from the [date of the] original entitlement." R. at 10.

A March 28, 1988, VA cardiopulmonary examination stated that the veteran reported having asthma attacks daily during the summer. The report of the physical exami-

nation at that time states: "Auscultation of the lungs reveals shortened expiratory phase and diminished intensity of breath sounds with a hyperresonant percussion note." R. at 11. In an April 1988 decision, the RO denied a rating higher than 30% for the veteran's asthma. R. at 13. A July 1990 VA X-ray report stated that the veteran's lung fields were unremarkable. R. at 15. A July 23, 1990, VA cardiopulmonary examination stated that the veteran continued to use several medications and to suffer asthma attacks, which sometimes woke him up at night. R. at 18. On the report of the physical examination, the VA examining physician found: "The lungs are entirely clear to auscultation and percussion. There are no wheezes, rales, or rhonchi." *Ibid.*

On July 31, 1990, the RO issued a decision proposing, pursuant to 38 C.F.R. § 3.105(e) (1992), to reduce the veteran's asthma rating to 10%. R. at 21–22. The RO noted his complaints and the VA examiner's July 1990 findings, and concluded:

> Symptoms and findings related to service-connected bronchial asthma are shown as no more than mild with history of asthmatic type breathing, high[-]pitched expiratory wheezing and dyspnea, occurring several times a year with no clinical findings between attacks. Veteran's asthma was essentially asymptomatic on most recent VA examination.

R. at 22. The RO informed the veteran that he had 60 days in which to submit evidence showing why the rating should not be reduced. The veteran in September 1990 wrote to the RO and requested a hearing. R. at 25. On October 19, 1990, he appeared at a personal hearing before the RO and testified under oath that he suffered from wheezing almost every day, sometimes waking him up at night; that he had taken about 300 hours of leave without pay due to his asthma in the prior year; that he had previously gone to the emergency room approximately four times due to asthma attacks, but had not been to the emergency room in the prior year; that he was then receiving outpatient treatment at a VA facility approximately once every six

months; that he was unable to engage in any physical activities; that he suffered shortness of breath after walking up only ten or twelve stairs; and that he used his medication every day. R. at 27–36.

The report of a December 3, 1990, VA special cardiopulmonary examination stated that the veteran reported having more trouble breathing during the previous couple of years; that he could walk six blocks (but sometimes less) without problem; that his asthma woke him up at night two or three times a week; and that he continued to take medication and smoke half a pack of cigarettes a day. R. at 38. Physical examination at that time revealed "no acute distress"; "clear breath sounds except minimum wheeze on forced expiration"; a pulmonary system that was normal to percussion; and pulmonary testing that was normal "other than a minimally elevated residual volume". The diagnoses were "1. Probable mild asthma with some increased problems in the early AM" and "2. Smoker contributing to Problems in #1". R. at 39.

In a December 28, 1990, decision, the VA hearing officer upheld the proposed rating reduction, stating that "the findings of two VA examinations did not reveal moderate asthma consisting of rather frequent asthmatic attacks with moderate dyspnea on exertion between attacks to warrant a 30% evaluation.". R. at 43–44. In a January 3, 1991, decision, the RO reduced the asthma rating to 10%, effective April 1, 1991. R. at 45–46. The veteran thereafter submitted an undated letter from his U.S. Postal Service supervisor, stating that a severe asthma attack at work on April 3, 1991, had required the veteran to be rushed to the medical unit and placed on oxygen for 15 minutes, and also that the veteran had in the past called in sick to work due to asthma. R. at 59.

In the adverse November 1991 decision here on appeal, the BVA recited and discussed most of the evidence, although it did not mention the recent, undated statement from the veteran's Postal Service supervisor. The Board concluded:

The veteran has complained of frequent asthma attacks, and he apparently takes daily medication for bronchial asthma. However, physical examinations of his lungs, pulmonary function tests, and chest X-rays revealed minimal pathology, in fact most findings were normal. Moreover, it has been reported that the veteran continues to smoke, which has been related to his respiratory complaints. Additionally, he has reported that at times he is able to walk six or more blocks without trouble. Moderate dyspnea on exertion is not demonstrated by the findings. In conclusion, the Board finds that the veteran's disability picture does not more nearly approximate the criteria for moderate bronchial asthma, and reinstatement of the 30 percent evaluation is not indicated by a preponderance of the evidence.

*Brown,* BVA 91–36782, at 5.

## II. Analysis
### A. Applicability of Regulations Governing Rating Reductions

*i. Section 3.344(c):* In 38 C.F.R. § 3.344(a), the Secretary has established specific requirements that must be met in order for VA to reduce certain service-connected disability ratings. Specifically, that section provides, inter alia:

It is essential that the entire record of examinations and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history.... Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. Ratings on account of diseases subject to temporary and episodic improvement, e.g., ... asthma ..., will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.... Moreover, though material improvement in

the physical or mental condition is clearly reflected, the rating agency will be considered [sic] whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life.

38 C.F.R. § 3.344(a) (1992). Paragraph (c) of § 3.344 provides: "The provisions of paragraphs (a) and (b) of this section apply to *ratings which have continued for* long periods of time at the same level *(5 years or more).* They do not apply to disabilities which have not become stabilized or which are likely to improve." *Ibid.* (Emphasis added.) In *Lehman v. Derwinski,* 1 Vet. App. 339 (1991), the Court characterized the paragraph (c) five-year provision as being only a "guideline", and held that paragraph (c) was satisfied and that the requirements of paragraph (a) thus applied where the rating had been in effect for four years and either 363 or 364 days and the total period had equalled five 365–day periods due to leap years. *Lehman,* 1 Vet. App. at 342. In a subsequent opinion in *Smith (Raymond) v. Brown,* however, the Court concluded that the *Lehman* holding rendered "in the context of the particularly compelling facts of that case" (*Lehman*) did not warrant a conclusion that the five-year provision was satisfied by a rating that had been in effect in *Smith* for four years, ten months, and 22 days. *Smith (Raymond) v. Brown,* 5 Vet.App. 335, 339, (1993).

■ On appeal to this Court, the appellant asserts, inter alia, that his 30% disability rating for asthma had been in effect for more than five years, thus requiring the Board to apply the provisions of § 3.344(a) in considering the reduction of his rating, and that the Board had failed to comply with those regulatory requirements. The Secretary asserts that the BVA decision should be affirmed because the Board had adequately complied with the requirements of § 3.344(a), and that, in any event, § 3.344(a) may not be applicable on the ground that the five-year requirement was not met.

The determination whether the veteran's 30% asthma rating had been in effect for five years or more requires the Court to identify the relevant beginning and ending dates for measuring the duration of that rating for purposes of applying § 3.344. The veteran's 30% asthma rating was made effective as of February 28, 1986, and was reduced to 10% effective April 1, 1991. R. at 10, 46. Therefore, if the duration of the rating for purposes of § 3.344(c) is measured solely by its effective dates, the veteran here has clearly satisfied the five-year requirement.

In his brief and at oral argument, the Secretary asserted that the five-year requirement may not be satisfied because, although the effective date of the 30% rating was February 28, 1986, that rating and effective date were first assigned (retroactively) in an April 14, 1987, RO decision (R. at 10) and, hence, the rating was actually in effect only from April 14, 1987, to April 1, 1991, which is less than four years.

The Secretary's argument, however, must fail. The applicable words of 38 C.F.R. § 3.344(c) are "ratings which have continued for ... 5 years or more...." The governing law and regulations provide that "the effective date of an award ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C.A. § 5110(a) (West 1991); *see* 38 C.F.R. § 3.400 (1992). In the instant case, the RO, in its April 1987 decision awarding a 30% rating, specifically stated that the veteran's asthma "is considered to be of this severity from the original entitlement" and assigned an effective date of February 28, 1986, for that rating. Hence, February 28, 1986, is the date on which, as a matter of law, the veteran's 30% rating became effective, and that date must be considered as the beginning date of that "rating" for purposes of measuring the five-year "rating" period under § 3.344(c).

Neither party has suggested that the ending date of the veteran's 30% rating for purposes of determining the duration of that rating should be any date other than April 1, 1991, the date on which the RO

reduction of that rating became effective. The Court, notes, however, that reliance upon that date as the final date of the 30% rating in this case results in a conclusion that the RO, in its decisions proposing and then prospectively effectuating the rating reduction, was required to apply § 3.344 prospectively, even though the rating had not yet been in effect for five years at the time of those decisions. Pursuant to 38 C.F.R. § 3.105(e), when the RO determines that a rating reduction is warranted, it is required to issue a proposed rating reduction, setting forth the reasons for the proposed reduction, and to allow the veteran a period of at least 60 days to submit additional evidence to show that the rating should not be reduced. Furthermore, when, after such period, the RO issues a decision reducing the rating, that reduction does not become effective until the "[l]ast day of [the] month following 60 days after notice to [the] payee" of the reduction decision. 38 C.F.R. § 3.400(r) (1992); *see* 38 C.F.R. § 3.105(e).

The effect of §§ 3.105(e) and 3.400(r) combined is that a rating reduction cannot be made effective for a minimum of 120 days after it is proposed in writing to the veteran. In the instant case, the veteran's 30% rating had been in effect for nearly four-and-one-half years at the time of the RO's July 1990 proposal of a rating reduction, and the RO, therefore, was not then required to apply the provisions of § 3.344. The veteran subsequently requested and appeared at a personal hearing and submitted additional evidence. At the time of the January 1991 RO decision ordering the reduction from 30% to 10%, the 30% rating had been in effect for four years and ten months, still short of satisfying the five-year requirement so as to require application of § 3.344. However, because VA regulations required, as the RO recognized in its January 1991 decision, that that reduction be made effective on April 1, 1991, the 30% rating continued in effect until March 31, 1991, thus making the overall duration of the 30% rating more than five years. Therefore, if the last date of the 30% rating in this case for purposes of applying § 3.344(c) is the effective date of the reduc-

tion, then the RO in this case was required to apply § 3.344 in making the reduction, even though the 30% rating had not been in effect for five years at the time of the decision either proposing the reduction or ordering it and, moreover, even though the RO could not have known at the time of the proposed reduction in July 1990 that the rating would end up being in effect for more than five years by the time that such a reduction actually took effect.

One result of considering the effective date of a rating reduction as the applicable benchmark date in all cases for purposes of applying § 3.344(c) is that an RO in many cases will have no way of knowing for certain, at the time it proposes a reduction, whether it will be required to apply the provisions of § 3.344 in making that reduction, because the five-year period will be completed more than 120 days after the reduction is first proposed under § 3.105(e). Moreover, a claimant, by requesting a hearing before the RO and by submitting additional evidence after the proposed rating reduction, whether for legitimate or dilatory purposes, will in some cases be able to forestall a rating reduction from taking effect until after his or her rating has been in effect for five years.

Although the Court finds these concerns—especially the latter one—significant, the express language of § 3.344(c) and other VA regulations compels the conclusion that the duration of a rating for purposes of § 3.344(c) must be measured from the effective date assigned that rating until the effective date of the actual reduction. Regardless of how long a rating had been in effect at the time a reduction is proposed or ordered, if a reduction actually takes effect after a rating has been in effect for five years, then it is a reduction of a "rating[ ] which ha[s] continued" for five years or more, and, hence, becomes subject to the requirements of § 3.344. Although this result may require VA, in cases such as this, to revise proposed rating reductions to take account of § 3.344 when the five-year period is satisfied and that provision thus becomes applicable, and to apply § 3.344 prospectively

when the rating period will likely satisfy the five-year requirement before the reduction takes effect—and certainly in every case in which the five-year period will be completed within 120 days after the reduction-proposal date—those results flow from the plain and unambiguous language of the regulation. Because this regulatory language is neither ambiguous nor inconsistent with law, it must be applied in accordance with its plain meaning. *See Jensen v. Brown,* 4 Vet.App. 304, 306 (1993) (Court rejected VA's interpretation of regulatory provision as inconsistent with plain meaning of the provision); *cf. Smith,* 5 Vet.App. at 337, 339 (measuring duration of veteran's rating from effective date of award to effective date of reduction); *Lehman,* 1 Vet.App. at 341–42 (same). If the Secretary disagrees with these results, he is, of course, free to specify otherwise or even to remove the five-year requirement altogether.

Therefore, the Court concludes that the veteran's 30% rating in the instant case, made effective as of February 28, 1986, and continuing in effect until March 31, 1991, satisfied the five-year requirement of § 3.344(c), and that, therefore, the reduction could be effected only in compliance with the provisions of § 3.344(a).

*ii. Section 3.344(a):* Under VA's regulatory Schedule for Rating Disabilities, a 30% rating for asthma is warranted when the symptoms are as follows: "Moderate: asthmatic attacks rather frequent (separated by only 10–14 day intervals) with moderate dyspnea on exertion between attacks". 38 C.F.R. § 4.97, diagnostic code 6602 (1992). A 10% rating is warranted where the symptoms are: "Mild: paroxysms of asthmatic type breathing (high pitched expiratory wheezing and dyspnea) occurring several times a year with no clinical findings between attacks". *Ibid.*

The Secretary asserts that the BVA decision complied with the requirements of § 3.344(a) in reducing the veteran's disability rating from 30% to 10%. The Court does not agree. That regulatory provision, as quoted in part II.A.i., above, contains at least four specific requirements applicable

to the rating reduction in the present case: (1) the Board must review "the entire record of examinations and the medical-industrial history ... to ascertain whether the recent examination is full and complete"; (2) "[e]xaminations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction"; (3) "[r]atings on account of diseases subject to temporary and episodic improvement, e.g., ... asthma ..., will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated"; and (4) "[al]though material improvement in the physical or mental condition is clearly reflected, the rating agency will [consider] whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life". 38 C.F.R. § 3.344(a) (1992); *see Dofflemeyer v. Derwinski,* 2 Vet.App. 277, 280 (1992); *Schafrath v. Derwinski,* 1 Vet.App. 589, 594–95 (1991).

■ The Board in this case failed to comply with each of those requirements. First, although the Board concluded that "the rating examination which was performed prior to reducing the veteran's evaluation from a 30 to 10 percent evaluation, was full and complete" (*Brown,* BVA 91–36782, at 4), the Board did not base that conclusion upon review of "the entire record of examinations and the medical-industrial history" as required by § 3.344(a). The Board's decision does not discuss either the extent of the veteran's prior medical examinations, the findings and conclusions noted on those examinations, or the veteran's medical-industrial history. Therefore, the Board's cursory conclusion that the recent medical examination was "full and complete" does not satisfy the express requirements of § 3.344(a). *See Murincsak v. Derwinski,* 2 Vet.App. 363, 369 (1992).

■ Second, under § 3.344(a), the RO and BVA could not properly reduce the veteran's 30% rating on the basis of an examination that was "less full and complete" than such prior examinations. Yet,

the Board's bare conclusion that the VA examination on which the reduction was based was "full and complete" fails to explain whether that examination was at least as full and complete as the examinations upon which the veteran's 30% rating was awarded or continued. Hence, the rating reduction is also not in compliance with § 3.344(a) on this account. *See Horowitz v. Brown*, 5 Vet.App. 217, 223 (U.S.1993).

■ Third, the Board failed to discuss whether "material improvement in the physical or mental condition is clearly reflected" and whether "the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life". In its statement of the reasons or bases for its decision, the Board discussed only the evidence from the July and December 1990 VA examinations and the veteran's testimony at his October 1990 VA hearing, and concluded that, based upon that evidence, a rating reduction was warranted. The Board did not make any specific finding that the veteran's condition had actually improved, let alone the finding required by § 3.344(a) that there had been "material improvement" that was "reasonably certain ... [to] be maintained under the ordinary conditions of life". Indeed, the Board made no reference in its discussion to the veteran's prior examinations or to his entire medical-industrial history to determine whether, upon evaluation of the full history of the disability, that condition had undergone sustainable material improvement. As the Court stated in *Schafrath*, 1 Vet.App. at 594, "[w]hether or not a disability has improved cannot be determined without reference to prior records detailing the history of that condition." Therefore, in the absence of a review of the full medical-industrial history of the veteran's condition and a finding of material improvement that is reasonably certain to be maintained under the ordinary conditions of life, the Board's decision further fails to satisfy the § 3.344(a) requirements that must be met before the veteran's 30% disability rating may lawfully be reduced. *See Schafrath, supra; Murincsak, supra.*

With respect to the remaining requirement of § 3.344(a) noted above—that a rating for a condition, such as asthma, that is subject to "temporary or episodic improvement", may not be reduced on any one examination unless all the evidence clearly warrants the conclusion that sustained improvement has been demonstrated—the Court notes that the Board's decision discusses two VA examinations, in July and December 1990, to support its conclusion. However, for the reasons stated above, the Board's reliance on those examinations is not justified because the Board failed to establish, based upon review of the veteran's entire medical-industrial history, that those examinations were at least as full and complete as the examinations upon which the 30% rating was awarded or continued and that those recent examinations revealed material improvement that was reasonably certain to be maintained under the ordinary conditions of life.

■ *iii. General regulatory requirements:* Additionally, the Board failed to comply with several general VA regulations applicable to all rating reductions regardless of whether the rating has been in effect for five years or more as required by § 3.344(c). Specifically, 38 C.F.R. § 4.1 (1992) states that "[i]t is ... essential, both in the examination and in the evaluation of the disability, that each disability be viewed in relation to its history." Similarly, 38 C.F.R. § 4.2 (1992) establishes that "[i]t is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present." These provisions impose a clear requirement that VA rating reductions, as with all VA rating decisions, be based upon review of the entire history of the veteran's disability. *See Schafrath*, 1 Vet.App. at 594. Furthermore, 38 C.F.R. § 4.13 (1992) provides: "When any change in evaluation is to be made, the rating agency should assure itself that there has been an actual change in the condition, for better or worse, and not merely a difference in the

thoroughness of the examination or in use of descriptive terms."

Pursuant to these provisions, the RO and Board are required in any rating-reduction case to ascertain, based upon review of the entire recorded history of the condition, whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based upon thorough examinations. *See Schafrath, supra* ("these requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based on a single, incomplete or inaccurate report and to enable VA to make a more precise evaluation of the level of disability and of any changes in the condition."). Finally, 38 C.F.R. § 4.10 (1992) establishes that "[t]he basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body, to function under the ordinary conditions of daily life, including employment", and 38 C.F.R. § 4.2 (1992) directs that "[e]ach disability must be considered from the point of view of the veteran working or seeking work." Thus, in any rating-reduction case not only must it be determined that an improvement in a disability has actually occurred but also that that improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work.

### B. Burden of Proof

In its decision affirming the reduction in the veteran's rating, the Board found: "After a review of the evidentiary data of record, the Board finds that the preponderance of the evidence is not *in the veteran's favor* for reinstatement of a 30 percent evaluation for asthma." *Brown,* BVA 91–36782, at 5 (emphasis added). Citing 38 U.S.C.A. § 5107 (West 1991) and 38 C.F.R. § 4.7 (1992), the Board concluded: "In conclusion, the Board finds that the veterans' disability picture does not more nearly approximate the criteria for moderate bronchial asthma, and *reinstatement* of the 30 percent evaluation is not indicated

*by a preponderance* of the evidence." *Ibid.* (Emphasis added.) The cited regulation, 38 C.F.R. § 4.7 (1992), provides: "Where there is a question as to which of two evaluations will be applied, the higher evaluation will be applied if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned."

The quoted statements by the Board constitute serious errors in the allocation of the burden of proof. Statutory section 5107(b) provides:

When, after consideration of all evidence and material of record ..., there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.

38 U.S.C.A. § 5107(b) (West 1991). Pursuant to that provision, a claim must be resolved in the veteran's favor unless "the Board concludes that a fair preponderance of evidence weighs against the claim." *Gilbert v. Derwinski,* 1 Vet.App. 49, 58 (1990). The Board's above-quoted statements essentially reverse the applicable standard of proof by requiring the claimant to prove by a preponderance of evidence that he was entitled to a 30% rating. The Board's inversion of the applicable standard of proof is particularly grievous in this case, which "is a rating reduction case, not a rating increase case." *Peyton v. Derwinski,* 1 Vet.App. 282, 286 (1991); *see also Horowitz,* 5 Vet.App. at 223; *Dofflemeyer,* 2 Vet.App. at 280.

Because the issue in this case is whether the RO was justified in reducing the veteran's 30% rating, rather than whether the veteran was entitled to "reinstatement" of the 30% rating, the Board was required to establish, by a preponderance of evidence and in compliance with 38 C.F.R. § 3.344(a), that a rating reduction was warranted. Moreover, in view of the posture of this rating-reduction case and the applicability of § 3.344(a) requiring a finding of "material improvement", it was error for the Board to apply 38 C.F.R. § 4.7 in this case

to require a finding that the "disability picture more nearly approximates" the criteria for a 30% rating. Thus, for several reasons, the Board erred prejudicially in placing the burden on the claimant to demonstrate entitlement to a 30% rating, and so to demonstrate by a preponderance of evidence.

### III. Conclusion

Where, as here, the Board has reduced a veteran's rating without observance of applicable law and regulation, such a rating is void ab initio and the Court will set it aside as "not in accordance with law". 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *see Horowitz*, 5 Vet.App. at 223; *Dofflemeyer*, 2 Vet.App. at 282; *Schafrath*, 1 Vet.App. at 595–96. Therefore, upon consideration of the record and the submissions of the parties, the Court reverses the November 13, 1991, BVA decision and remands the matter to the Board for reinstatement of the veteran's prior 30% disability rating.

REVERSED AND REMANDED.