Citation Nr: 1205182 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-12 122 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Propriety of the reduction in the rating for service-connected left ulnar neuropathy, from 40 percent to 10 percent, effective July 1, 2009. 

2. Entitlement to an evaluation in excess of 40 percent for left ulnar neuropathy.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

J. D. Deane, Counsel


INTRODUCTION

The Veteran had active military service from December 1975 to August 1982. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision rendered in April 2009 by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In December 2011, the Veteran testified at a hearing before the undersigned Veterans Law Judge at the RO. A copy of the transcript of that hearing is of record. 
During that month, the Veteran also submitted additional evidence to the Board for consideration in connection with the claim on appeal along with a waiver of RO jurisdiction of such evidence. Thus, the Board may properly consider the newly received evidence. 38 C.F.R. § 20.1304 (2011). 

A review of the Veteran's Virtual VA file showed that the RO assigned a 100 percent temporary total rating (T/TR) under the provisions of 38 C.F.R. § 4.30 based on the need for convalescence following a left wrist surgical procedure, effective May 13, 2011, in a January 2012 rating decision. The scheduler 10 percent rating was restored from July 1, 2011. 

The issue of entitlement to service connection for a right knee disorder has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 



The issue of entitlement to an evaluation in excess of 40 percent for left ulnar neuropathy is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Left ulnar neuropathy had been in effect for less than five years from the date of its decrease from 40 percent to 10 percent, effective July 1, 2009. 

2. Reduction of the Veteran's evaluation for his service-connected left ulnar neuropathy from 40 to 10 percent was not supported by the evidence of record at the time of the reduction, as improvement in the Veteran's left ulnar neuropathy disability was not clearly shown on reexamination.


CONCLUSION OF LAW

The reduction of the disability rating for the Veteran's left ulnar neuropathy from 40 percent to 10 percent was not proper, and the 40 percent rating is restored effective July 1, 2009. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.105(e); 3.344, 4.124a, Diagnostic Code 8516 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VCAA

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The restoration of the 40 percent rating for the service-connected left ulnar neuropathy constitutes a complete grant of the benefits sought on appeal with respect to that issue. As such, no further action is required to comply with the VCAA and the implementing regulations.

Laws and Regulations

A veteran's disability rating shall not be reduced unless an improvement in the disability is shown to have occurred. 38 U.S.C.A. § 1155 (West 2002). The United States Court of Appeals for Veterans Claims (Court) has consistently held that when a RO reduces a veteran's disability rating without following the applicable regulations, the reduction is void ab initio. Greyzck v. West, 12 Vet. App. 288, 292 (1999). 

Prior to reducing a veteran's disability rating, VA is required to comply with several general VA regulations applicable to all rating-reduction cases, regardless of the rating level or the length of time that the rating has been in effect. 38 C.F.R. §§ 4.1, 4.2, 4.10, 4.13 (2011); see also Brown v. Brown, 5 Vet. App. 413, 420 (1993). These provisions impose a clear requirement that VA rating reductions be based upon review of the entire history of the veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Such review requires VA to ascertain, based upon review of the entire recorded history of the condition, whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based upon thorough examinations. Thus, in any rating reduction case not only must it be determined that an improvement in a disability has actually occurred, but also that that improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work. Faust v. West, 13 Vet. App. 342, 350 (2000). 

In certain rating reduction cases, VA benefits recipients are to be afforded greater protections, set forth in 38 C.F.R. § 3.344 (2011). That section provides that rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. However, the provisions of 38 C.F.R. § 3.344 specify that ratings on account of diseases subject to temporary or episodic improvement, such as, psychiatric disorders will not be reduced on any one examination, except in those instance where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. The regulations provide further, that these considerations are required for ratings which have continued for long periods at the same level (five years or more), and that they do not apply to disabilities which have not become stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant a reduction in rating. 

Under 38 C.F.R. § 3.344, the RO must find the following: (1) based on a review of the entire record, the examination forming the basis for the reduction is full and complete, and at least as full and complete as the examination upon which the rating was originally based; (2) the record clearly reflects a finding of material improvement; and (3) it is reasonably certain that the material improvement found will be maintained under the ordinary conditions of life. Kitchens v. Brown, 7 Vet. App. 320 (1995); Brown, 5 Vet. App. 413, 419 (1993). 

There are specific notice requirements, found in 38 C.F.R. § 3.105(e)-(i), which are applicable to reductions in ratings. 38 C.F.R. § 3.105(e) sets forth procedural requirements for reductions in disability compensation ratings. When a reduction is anticipated, the beneficiary must be notified of the proposed reduction, with notice of the reasons for the proposed reduction. Further, the beneficiary must be allowed a period of at least 60 days to submit additional evidence to show that the rating should not be reduced. After the allotted period, if no additional evidence has been submitted, final rating action will be taken and the rating will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating expires. 38 C.F.R. § 3.105(e). 

When the procedures of 38 C.F.R. § 3.105(e) are applicable, VA must comply with those provisions rather than the notice and duty provisions in the Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011). See, e.g., Kitchens v. Brown, 7 Vet. App. 320, 325 (1995); Brown v. Brown, 5 Vet. App. 513 (1993); Venturella v. Gober, 10 Vet. App. 340, 342-43 (1997) (defining evidence which may be used in such determinations). 

The question is thus whether the reductions were proper based on the evidence of record. Where a disability rating has continued at the same level for less than five years, that analysis is conducted under 38 C.F.R. § 3.344(c). Where a disability rating has continued at the same level for five or more years, the analysis is conducted under 38 C.F.R. § 3.344(a) and (b). 

Here, the Veteran's 40 percent disability rating for left ulnar neuropathy was awarded effective, July 30, 2004, and was reduced effective July 1, 2009, less than five years later. 38 C.F.R. § 3.344(c) is therefore applicable. Under that regulation, a reexamination disclosing improvement in the Veteran's left ulnar neuropathy disability will warrant a reduction in rating.

A distinction is made between major (dominant) and minor musculoskeletal groups for rating purposes. 38 C.F.R. § 4.69 (2011). Evidence of record has repeatedly detailed that the Veteran was considered left hand dominant. 

Under Diagnostic Code 8515, a 10 percent evaluation is warranted for mild incomplete paralysis of the median nerve of the major upper extremity. A 30 percent evaluation requires moderate incomplete paralysis of the ulnar nerve of the major upper extremity. A 50 percent evaluation requires severe incomplete paralysis of the major upper extremity. A 70 percent evaluation is warranted for complete paralysis of the median nerve for the major hand, with the hand inclined to the ulnar side with the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, and the thumb in the plane of the hand (ape hand); incomplete and defective pronation of the hand with the absence of flexion of the index finger, feeble flexion of the middle finger, inability to make a fist, and index and middle fingers that remain extended; inability to flex the distal phalanx of the thumb with defective opposition and abduction of the thumb at right angles to the palm; weakened flexion of the wrist; and pain with trophic disturbances. 38 C.F.R. § 4.124a , Diagnostic Code 8515 (2011). 

Under Diagnostic Code 8516, a 10 percent evaluation is warranted for mild incomplete paralysis of the ulnar nerve of the major upper extremity. A 30 percent evaluation requires moderate incomplete paralysis of the ulnar nerve of the major upper extremity. A 40 percent evaluation requires severe incomplete paralysis of the major upper extremity. A 60 percent evaluation requires complete paralysis of the major upper extremity with "griffin claw" deformity due to flexor contraction of the ring and little fingers, very marked atrophy in the dorsal interspaces and the thenar and hypothenar eminences, loss of extension of the ring and the little fingers, an inability to spread or reverse the fingers, an inability to adduct the thumb, and weakened of wrist flexion. 38 C.F.R. § 4.124a, Diagnostic Code 8516 (2011). 

The term "incomplete paralysis" used in reference to evaluation of peripheral nerve injuries indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a (2011). 

Factual Background and Analysis

In the December 2004 rating decision, the RO awarded entitlement to service connection and assigned a 40 percent rating for the Veteran's service-connected left ulnar neuropathy, effective July 30, 2004. The rating was coded under Diagnostic Code 8515, which appears to have been in error. Diagnostic Code 8515 relates to the median nerve and does not provide for a 40 percent rating. Conversely, Diagnostic Code 8516 pertains to the ulnar nerve and permits the assignment of a 40 percent rating. The Board will therefore presume it was the RO's intent to code the Veteran's left ulnar neuropathy under Diagnostic Code 8516. 

A review of the record shows that the 40 percent evaluation for left ulnar neuropathy was based, in part, on a November 2004 VA peripheral nerves examination report. 

In that report, the Veteran complained of paroxysmal episodes of twitching or jerking, fatigue, weakness, and parathesias. It was indicated that the Veteran was left hand dominant and exhibited decreased left hand grip secondary to pain in fingers as well as pain in the left elbow elicited with supination and pronation. Neurological findings were noted as deep tendon reflexes (1+ at brachioradialis and biceps bilaterally and nonexistent at triceps), decreased or absent sensation, and severe left ulnar entrapment neuropathy on EMG/NCV study. The examiner listed an impression of left ulnar neuropathy documented by EMG/NCV with secondary left wrist/hand pain/weakness. 

Evidence of record detailed that the Veteran underwent a routine review examination for evaluation of his service-connected left ulnar neuropathy in December 2008. 

In that report, the Veteran was noted to complain of continuous, consistent symptoms with intermittent daily numbness/burning/tingling (in the left hand, little finger, ring finger, and ulnar part of the left hand), intermittent spasm of the left hand, weakness, and decreased grip strength. On sensory impairment evaluation, the Veteran exhibited normal sensation to light touch on the left forearm but not intact to light touch on the left little finger and ring finger as well as absent sensation to pinprick on the left little finger, ring finger, and part of the ulnar area of the left hand. Additional neurological examination findings were listed as full left side muscle strength, normal left hand grip, no atrophy or muscle wasting, and no joint affected by peripheral nerve condition. The examiner listed a diagnosis of left ulnar neuropathy with no objective weakness related to peripheral neuropathy. 

A February 2009 rating decision and supplementary letter from the RO informed the Veteran of the proposal to reduce the disability evaluation for his service-connected left ulnar neuropathy from 40 percent to 10 percent based on noted, sustained improvement. 

In an April 2009 rating decision and supplementary letter, the RO decreased the Veteran's disability evaluation for his service-connected left ulnar neuropathy from 40 percent to 10 percent, effective July 1, 2009. It was noted that the evaluation was decreased based on the fact that the only abnormality of the left forearm shown on examination was decreased sensation to light touch and pinprick in the little and ring finger area of the left hand. 

In a June 2009 statement, the Veteran expressed his disagreement with the RO's reduction of his rating. 

During his December 2011 hearing, the Veteran again disagreed with the proposed reduction, indicating that his left wrist disability had not improved prior to his surgery in May 2011. He pointed to his recent left wrist surgery, which involved left cubital tunnel release, as evidence of the continued severity of his disability.

As an initial matter, the requirements under 38 C.F.R. § 3.105(e) for reduction of the scheduler disability rating from 40 to 10 percent for left ulnar neuropathy was properly carried out by the RO. In February 2009, the RO notified the Veteran of a proposed rating reduction (issued in a February 2009 rating decision), and the RO instructed the Veteran to submit within 60 days any additional evidence to show that his rating should not be reduced. The RO took final action to reduce the disability rating in an April 2009 rating decision, in which the rating was reduced from 40 to 10 percent, effective July 1, 2009. The RO informed the Veteran of this decision by letter dated in April 2009.

As noted above, in regards to disability ratings in effect for less than five years, adequate reexamination that discloses improvement in the condition will warrant reduction in rating under 38 C.F.R. § 3.344(c). Improvement may be gauged by medical findings in conjunction with the diagnostic code pursuant to which the disability is rated.

In this case, when the November 2004 VA examination report is compared with the December 2009 VA examination report that formed the basis for the 40 percent rating, improvement in the Veteran's left ulnar neuropathy disability was not clearly demonstrated. Each of the VA examination reports featured similar complaints of pain, weakness, spasm, and numbness or parathesias. The Board further notes that while the December 2008 VA examiner found the Veteran to have full muscle strength with no objective weakness related to peripheral neuropathy, he clearly did not review the claims file, obtain updated neurological testing, or appear to consider the Veteran's complaints of pain and weakness when addressing left wrist weakness. An EMG/NCV was not performed in conjunction with the December 2008 VA examination. As such, the Board has determined that the December 2008 VA examination report findings do not constitute an adequate reexamination that disclosed improvement in the left wrist condition to warrant the reduction in the Veteran's disability rating for left ulnar neuropathy.

In summary, the record demonstrates that the procedural requirements for a reduction in rating have been met as specified under the provisions of 38 C.F.R. § 3.105(e). However, evidence of record does not substantiate that the reduction in the rating from 40 to 10 percent for left ulnar neuropathy was warranted. Based on the foregoing, restoration of a 40 percent rating for left ulnar neuropathy, effective July 1, 2009, is warranted. 


ORDER

As the reduction in the rating for service-connected left ulnar neuropathy, from 40 percent to 10 percent, effective July 1, 2009, was not proper, restoration of the 40 percent rating, effective July 1, 2009, is granted. 



REMAND

A review of the claims file reveals that further development on the matter of entitlement to an evaluation in excess of 40 percent for left ulnar neuropathy is warranted.

Pursuant to VA's duty to assist, VA will provide a medical examination or obtain a medical opinion based upon a review of the evidence of record if VA determines it is necessary to decide the claim. 38 C.F.R. § 3.159(c)(4)(i) (2011). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

The Board notes that the Veteran last had a VA examination to evaluate his service-connected left ulnar neuropathy in February 2009. Additional evidence associated with the claims file in 2011 indicated that the Veteran underwent a left wrist surgical procedure identified as left cubital tunnel release in May 2011. In addition, during his December 2011 hearing, the Veteran discussed increased left wrist disability residuals, to include radiating pain, tingling in the elbow, and painful post-surgical scar.

VA's statutory duty to assist the Veteran includes the duty to conduct a thorough and contemporaneous examination so that the evaluation of the claimed disability will be a fully informed one. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991); see also Snuffer v. Gober, 10 Vet. App. 400 (1997). Accordingly, the AMC should arrange for the Veteran to undergo a VA peripheral nerves examination at an appropriate VA medical facility to determine the severity of his service-connected left ulnar neuropathy. 

The claims file also reflects that the Veteran has received medical treatment for his service-connected left ulnar neuropathy from the VA Community-Based Outpatient Clinic (CBOC) in St. Augustine, Florida, as well as the VA hospital (VAH) in Tampa, Florida, and the Bay Pines VA Healthcare System (VAHCS); however, as the claims file only includes records from those facilities dated up to October 2010 and November 2011 respectively, any additional records from those facilities should be obtained. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

Accordingly, the case is REMANDED for the following actions:

1. Obtain any outstanding VA records of evaluation and/or inpatient or outpatient treatment of the Veteran's service-connected left ulnar neuropathy from the St. Augustine CBOC for the period from October 2010 to the present and from the Tampa VAH and Bay Pines VAHCS, for the period from November 2011 to the present.

All reasonable attempts should be made to obtain any identified records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran and his representative must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. 
§ 3.159(c)(2),(e).

2. The AMC should arrange for the Veteran to undergo a VA peripheral nerves examination to determine the current severity of his service-connected left ulnar neuropathy. All symptoms related to the original service-related disability (left ulnar neuropathy) and recent surgery should be identified and described. Any effected nerve groups should also be identified. The claims folder and a copy of this REMAND should be made available to and reviewed by the VA examiner. The VA examiner should note in the examination report that this has been accomplished. 

All indicated tests should be performed. All medical findings are to be reported in detail. The rationale for all opinions expressed should be provided in a legible report. If the examiner cannot provide an opinion without resorting to mere speculation, such should be stated along with supporting rationale. 

3. The Veteran must be given adequate notice of the date and place of any requested examination. A copy of all notifications, including the address where the notice was sent must be associated with the claims file. The Veteran is to be advised that failure to report for a scheduled VA examination without good cause shown may have adverse effects on his claim. 38 C.F.R. § 3.655.

4. After completion of the above and any additional development deemed necessary, readjudicate the issue currently on appeal (entitlement to an evaluation in excess of 40 percent for left ulnar neuropathy) with consideration of all applicable laws and regulations. If the benefit sought on appeal remains denied, the Veteran and his representative should be furnished an appropriate supplemental statement of the case and be afforded the opportunity to respond. Thereafter, the case should be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs