﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 200421-82758
DATE: August 31, 2020

ORDER

The 50 percent disability rating for the Veteran’s bilateral pes planus is restored.

A total disability rating based on individual unemployability as a result of service-connected disabilities is denied.

FINDINGS OF FACT

1. An April 2020 rating decision reduced the disability rating assigned for the Veteran’s service-connected bilateral pes planus from 50 percent to 30 percent effective July 1, 2020.

2. At the time of the April 2020 rating decision, the medical evidence did not reflect an improvement in the Veteran’s bilateral pes planus under the ordinary conditions of his life.

3. The Veteran’s service-connected disabilities are not shown to preclude the Veteran from obtaining or maintaining substantially gainful employment.

CONCLUSIONS OF LAW

1. The reduction of the Veteran’s 50 percent rating for bilateral pes planus was not proper. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.105, 3.951(b), 4.71a, Diagnostic Code 5276.

2. The criteria for a total disability rating based on individual unemployability as a result of service-connected disabilities (TDIU) have not been met. 38 U.S.C. §§ 1155, 5103, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from August 1961 to August 1962, and from March 1963 to March 1966.

The record reflects that a rating decision was issued in April 2020 as to the reduction of his pes planus. The Veteran timely appealed this rating decision to the Board and requested evidence submission reviewed by a Veterans Law Judge on April 21, 2020. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran within 90 days from receipt of VA Form 10182. 38 C.F.R. § 20.303.

Reduction

The Veteran was originally awarded a 50 percent evaluation for his service-connected bilateral pes planus pursuant to Diagnostic Code 5276 by a July 2017 rating decision. A January 2020 rating decision proposed to reduce his rating from 50 percent to a 30 percent rating. An April 2020 rating decision reduced the rating for his bilateral pes planus to 30 percent effective July 1, 2020. The Veteran asserts that the reduction was improper and that he is entitled to a 50 percent rating.

A veteran’s disability rating shall not be reduced unless an improvement in the disability is shown to have occurred. See 38 U.S.C. § 1155; Greyzck v. West, 12 Vet. App. 288, 292 (1999).

As a preliminary matter, the Board notes that the Veteran does not contend, and the evidence does not reflect, noncompliance with the procedural requirements for rating reductions. See 38 C.F.R. § 3.105(e). Therefore, the Board will focus only upon the propriety of the reduction.

The criteria governing certain rating reductions for certain service-connected disabilities is found in 38 C.F.R. § 3.344. The provisions of 3.344(a) and (b) apply to ratings that have been continued for five years or more. The 50 percent rating for pes planus had been in effect for less than five years at the time the reduction took place. Therefore, the provisions of 38 C.F.R. § 3.344(a) and (b) do not apply. Reexamination disclosing improvement will warrant a rating reduction. 38 C.F.R. § 3.344(c). Nevertheless, in Brown v. Brown, 5 Vet. App. 413 (1993), the Court stated that there are general VA regulations that apply to all rating reductions regardless of whether the rating has been in effect for five years or more. Id. at 420-421.

Specifically, 38 C.F.R. § 4.1 requires that each disability be viewed in relation to its history. 38 C.F.R. § 4.2 establishes that it is the reasonability of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. Furthermore, 38 C.F.R. § 4.13 provides that the rating agency should assure itself that there has been an actual change in the condition, for better or worse, and not merely a difference in the thoroughness of the examination or in use of descriptive terms. Additionally, in any rating reduction case, not only must it be determined that an improvement in a disability has actually occurred, but that such improvement reflects improvement in ability to function under ordinary conditions of life and work. Brown, 5 Vet. App. at 420-21. A claim as to whether a rating reduction was proper must be resolved in the veteran’s favor unless the Board concludes that a preponderance of evidence weighs against the claim. Brown, 5 Vet. App. at 421.

Under Diagnostic Code 5276 for pes planus, a 30 percent rating is assigned for severe bilateral pes planus with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated indication of swelling on use, and characteristic callosities. A 50 percent rating, the maximum rating available, is assigned when there is pronounced bilateral pes planus with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis on manipulation, not improved by orthopedic shoes or appliances.

In April 2017, the Veteran was afforded a VA examination. He reported having a pins and needles sensation and pain in his feet. He reported having flare-ups resulting in increased pain. He reported having functional loss that prevent him from walking more than a block without having to stop. The examiner indicated that the Veteran had pain on use of the feet that was accentuated on use. The examiner indicated that the Veteran had pain on manipulation of the feet that was accentuated on manipulation. The examiner indicated that the Veteran did not have marked pronation. The examiner indicated that the Veteran had extreme tenderness of plantar surfaces of both feet. The examiner indicated that the Veteran did not have marked inward displacement and severe spasm of the Achille’s tendon. The examiner indicated that there was no evidence of marked deformity. The examiner indicated that there was no indication of swelling on use. The examiner indicated there the Veteran did have characteristic callouses. The examiner indicated that the Veteran had pain with movement, weight-bearing, and nonweight-bearing.

Based on the findings of the April 2017 VA examination, the Veteran was granted service connection for bilateral pes planus and assigned an initial 50 percent rating effective July 29, 2016.

In December 2017, the Veteran was afforded a VA examination. He reported having pain with ambulation. He denied having any flare-ups or functional loss. The examiner indicated that the Veteran had marked pronation. The examiner indicated that the Veteran had pain on use of the feet that was not accentuated on use. The examiner indicated that the Veteran had pain on manipulation of the feet that was accentuated on manipulation. The examiner indicated that the Veteran did not have extreme tenderness of plantar surfaces of both feet. The examiner indicated that the Veteran did not have marked inward displacement and severe spasm of the Achille’s tendon. The examiner indicated that there was evidence of a marked deformity of the right foot. The examiner indicated that there was no indication of swelling on use. The examiner indicated there the Veteran did not have characteristic callouses. The examiner indicated that the Veteran had right foot pain on examination. The examiner reported that the Veteran had pain with ambulation and standing on the right foot resulting in loss of function.

In January 2020, the Veteran was afforded a VA examination. He reported worsening of his pes planus resulted in increased pain, difficulty walking, and difficulty with balance. He reported that he used a cane. He denied having flare-ups. He reported having functional loss that limited his walking. The examiner indicated that the Veteran had pain on use of both feet that was accentuated on use. The examiner indicated that the Veteran had pain on manipulation of the feet that was accentuated on manipulation. The examiner indicated that the Veteran used arch supports but that they provided no relief of symptoms. The examiner indicated that the Veteran did not have marked pronation. The examiner indicated that the Veteran did not have extreme tenderness of plantar surfaces of both feet. The examiner indicated that the Veteran did not have marked inward displacement and severe spasm of the Achille’s tendon. The examiner indicated that there was no evidence of marked deformity. The examiner indicated that there was no indication of swelling on use. The examiner indicated there the Veteran had characteristic calluses. The examiner indicated that the Veteran’s pes planus resulted in pain on movement, pain on weight-bearing, and deformity of the right foot. The examiner reported that the Veteran had difficulty standing for long periods of time and walking long distance likely as a result of his pes planus.

A January 2020 rating decision proposed to reduce the Veteran’s bilateral pes planus rating from 50 percent to 30 percent. An April 2020 rating decision decreased the Veteran’s bilateral pes planus rating to 30 percent effective July 1, 2020.

The Board sees fit to restore the 50 percent rating for bilateral pes planus. The findings of the April 2017 and December 2017 VA examiners show that the Veteran’s pes planus symptoms were consistent with a 50 percent rating. Although the findings of the January 2020 VA examiner showed that the Veteran’s bilateral pes planus symptoms were consistent with a 30 percent rating, the Veteran reported that his pes planus symptoms had actually worsened. The examiner indicated that the Veteran’s pes planus resulted in pain on movement, pain on weight-bearing, and deformity of the right foot. The examiner reported that the Veteran had difficulty standing for long periods of time and walking long distance likely as a result of his pes planus. As such, the medical evidence does not establish that the Veteran’s bilateral pes planus had actual improvement.

Accordingly, the reduction in the disability ratings for the Veteran’s bilateral pes planus was improper, and the 50 percent rating is restored effective July 1, 2020.

TDIU

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more, and that, if there are two or more service-connected disabilities, at least one must be rated at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a).

If, however, the veteran does not meet these required percentage standards set forth in 38 C.F.R. § 4.16(a), he still may receive a TDIU on an extraschedular basis if it is determined that he is unable to secure or follow a substantially gainful occupation by reason of his service-connected disabilities. 38 C.F.R. § 4.16(b); See also Fanning v. Brown, 4 Vet. App. 225 (1993). Thus, there must be a determination as to whether there are circumstances in this case, apart from any nonservice-connected conditions and advancing age, which would justify a total rating based on unemployability. See Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). 

Being unable to maintain substantially gainful employment is not the same as being 100 percent disabled. “While the term ‘substantially gainful occupation’ may not set a clear numerical standard for determining TDIU, it does indicate an amount less than 100 percent.” Roberson v. Principi, 251 F.3d 1378 (Fed Cir. 2001).

Assignment of a TDIU evaluation requires that the record reflect some factor that “takes the claimant’s case outside the norm” of any other veteran rated at the same level. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (citing 38 C.F.R. §§ 4.1, 4.15). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Id.

In May 2020, which was received withing 90 days of the VA Form 10182, the Veteran’s representative submitted private medical evidence in support of the Veteran’s TDIU claim. Pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009), a claim for a TDIU either expressly raised by the Veteran or reasonably raised by the record involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. As such, the claim for a TDIU is before the Board.

The Veteran is service connected for bilateral pes planus rated at 50 percent disabling, a right knee disability rated at 10 percent disabling, bilateral hearing loss rated at 10 percent disabling, and tinnitus rated at 10 percent disabling. As his combined disability rating is 70 percent effective July 29, 2016, he meets the schedular requirements for a TDIU.

The Veteran reported that he was unable to work due to his pes planus and right knee disability in a VA Form 21-8940 (Veteran’s Application for Increased Compensation Based on Unemployability). He indicated that he last worked full time in 2012. He indicated that he had a GED and attending police academy.

A review of the competent evidence of record, which includes the Veteran’s VA treatment records and his lay statements, when taken in total, does not suggest unemployability as a result of his service-connected disabilities.

In January 2017, a VA examiner reported that the Veteran’s bilateral hearing loss resulted in him asking people to repeat themselves and that the Veteran’s tinnitus interfered with his sleeping and concentration.

In April 2017, a VA examiner reported that the Veteran’s right knee disability resulted in him being unable to walk one city block without having to stop to relive the pain in his feet and right knee.

In December 2017, a VA examiner reported that the Veteran’s right knee disability resulted in difficulty standing, walking, and changing positions. The examiner reported that the Veteran’s ambulation was reduced to 30 minutes of activities. The examiner indicated that the Veteran’s pes planus did not impact his ability to perform any type of occupational tasks.

In January 2020, a VA examiner reported that the Veteran’s right knee disability resulted in difficulty standing for extended periods of time, difficulty walking, and difficulty going up and down stairs. The examiner reported that the Veteran’s pes planus resulted in difficulty standing for long periods of time and difficulty walking long distances. The examiner indicated that the Veteran was at least as likely as not able to perform sedentary work, that is work that required exerting up to 10 pounds of exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, or pull, and required only occasional walking and standing as sedentary work involved sitting most of the time.

In addition, at the January 2020 VA examination, the Veteran reported that he would be only be able to have a job that required no walking. 

In April 2020, Phillip Taylor, Sr., MPAS, PA-C, reported that the Veteran had constant right knee and right knee and right ankle pain. Mr. Taylor reported that the Veteran’s pain in his knees, ankles, and feet had worsened over the years to the point the Veteran could no longer work. Mr. Taylor reported that the Veteran was unable to secure gainful employment, even sedentary, due to his injuries and ailments.

After weighing all the evidence, the Board finds the greatest probative value in the VA examiners’ findings and the Veteran’s own report. While Mr. Taylor reported that the Veteran was unable to secure gainful employment due to his injuries, Mr. Taylor did not report that the Veteran was prevent from sustaining gainful employment solely due to his service-connected disabilities. Mr. Taylor considered the Veteran’s ankle pain, which is not service connected, in his assessment. Finally, Mr. Taylor also did not report that he reviewed the Veteran’s claims file nor did he refer to any medical evidence to support his findings.

Conversely, the VA examiners, after reviewing the Veteran’s claims file, interviewing the Veteran, and conducting examinations, concluded that the Veteran’s service-connected right knee disability resulted in difficulty standing for extended periods of time, difficulty walking, and difficulty going up and down stairs. The VA examiners concluded that the Veteran’s service-connected bilateral pes planus resulted in difficulty standing for long periods of time and difficulty walking long distances. Furthermore, the Veteran acknowledge that he would be able to work a job that required no walking.

The Board appreciates the opinion of Mr. Taylor. However, ultimately, the VA examiners’ findings and the Veteran’s own reports are given greater weight. The VA examiner conducted physical examinations and reviewed the Veteran’s claims file. The VA examiners considered the Veteran’s service-connected disabilities and his ability to sustain substantial gainful activity. As such, the findings of the VA examiners and the Veteran’s own self-reports are found to be the most probative evidence in this case, and therefore are afforded the greatest weight. 

The Veteran has not identified or submitted any competent evidence demonstrating that his service-connected disabilities preclude him from securing or maintaining substantially gainful employment and entitled him to a TDIU. 

As such, the claims file does not show that the Veteran is unable to obtain or maintain substantially gainful employment due to his service-connected disabilities. The Board does not believe that the Veteran’s service-connected disabilities prevents him from obtaining or maintaining substantially gainful employment consistent with the VA examiners’ findings and the Veteran’s own self-reports, such as a job that involved sitting, such as a store greeter or a surveillance system monitor.

From the above, it is the Board’s determination that the Veteran is able to obtain and maintain substantially gainful employment.

The rating schedule was created as a guide to evaluating disability resulting from all types of diseases and injuries encountered, and the percentage ratings that are assigned represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. 38 C.F.R. § 4.1. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.

Accordingly, a TDIU is denied.

 

 

Thomas H. O'Shay

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Berryman, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.