Citation Nr: 1331579 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 09-00 541 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to an increased rating for a right knee disability prior to October 21, 2008, described as PO meniscectomy with traumatic arthritis, rated as 30 percent disabling, irrespective of post-surgical periods of 100 percent ratings.

2. Entitlement to an increased rating for a right knee disability from October 21, 2008, described as a PO total knee arthrothomy (TKA) with traumatic arthritis, rated as 30 percent disabling.

3. Entitlement to restoration of a 20 percent rating for a left knee disability, described as degenerative joint disease (DJD) from July 1, 2011.

4. Entitlement to an increased rating for a left knee disability, described as degenerative joint disease (DJD), evaluated as 20 percent disabling to July 1, 2011 and 10 percent disabling thereafter.




REPRESENTATION

Appellant represented by: Vietnam Veterans of America


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

S. Grabia, Counsel


INTRODUCTION

The Veteran served on active duty from March 1974 to May 1975.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island which confirmed and continued previous ratings of 30 percent disabling for a right knee disorder and 20 percent disabling for a left knee disorder.

In February 2011 the Veteran testified at a hearing before a decision review officer at the RO. In November 2011, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. Transcripts of both proceedings are of record. The provisions of 38 C.F.R. § 3.103(c) (2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). During the November 2011 hearing, the undersigned clarified the issues on appeal and inquired as to the etiology, continuity, and severity of the Veteran's asserted symptoms. The Veteran was offered an opportunity to ask the undersigned questions regarding his claims. The Board, therefore, concludes that it has fulfilled its duty under Bryant.

Historically, by rating action in August 1975, service connection for a right knee disability was granted and a 10 percent rating was assigned. By rating action in July 1996, the rating was increased to 30 percent. Except for post-surgical periods of 100 percent disability assigned for convalescence from right knee surgery, it has remained at a 30 percent rating. 

By rating action in May 2003 service connection for a left knee disability was granted and a 20 percent rating was assigned. 

By rating action in December 2010 a reduction to 10 percent was proposed for the left knee disability. Subsequently, by rating action in March 2011, the 20 percent rating was reduced to 10 percent effective from July 1, 2011.

Regarding characterization of the issues on appeal, the Board notes that the issue of the propriety of the reduction of the rating as to the left knee arose in connection with a claim for an increased rating for his service-connected left knee disability. As the RO reduced the disability rating for the left knee during the appeal, the matter of whether the reduction of the disability rating was proper must also be addressed. See Dofflemyer v. Derwinski, 2 Vet. App. 277, 279-80 (1992). As such, the Board has recharacterized the issues as shown on the title page.

The Board remanded this appeal to the RO in May 2012 for additional development. In October 2012, prior to returning the case to the Board, the RO granted entitlement to a total disability rating based on individual unemployability (TDIU).

In addition to the paper claims file, there is a Virtual VA paperless claims file associated with the Veteran's claim. A review of the documents in such file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal.


FINDINGS OF FACT

1. Prior to October 21, 2008, the Veteran's right knee disability has been manifested by painful motion and severe impairment of the knee.

2. Since October 21, 2008, the Veteran's right knee disability, described as a TKA, has been manifested by an intermediate degree of residual weakness, pain, and limitation of motion as a result of a prosthesis.

3. When compared to VA examination results from March 2003, subsequent examinations in December 2007, October 2010, March 2011, and September 2012, do not clearly reflect sustained improvement over time such as to justify a reduction in rating.

4. The Veteran's left knee disability has been manifested by moderate knee impairment with painful motion with flexion limited to 30 degrees, including with repetitive motion prior to July 1, 2011 and by slight knee impairment with painful motion with flexion limited to 45 degrees, including with repetitive motion from July 1, 2011.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 30 percent for a right knee disability with severe impairment have not been met prior to October 21, 2008. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 3.321(b) (1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5257, 5260 (2012).

2. The criteria for a disability rating in excess of 30 percent for a right knee disability with TKA have not been met since October 21, 2008. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 3.321(b) (1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5055, 5257, 5261, 5262 (2012).

3. The criteria for a reduction of the rating for the service-connected left knee disorder from 20 percent to 10 percent, effective June 30, 2011, have not been met. 38 U.S.C.A. § 1155 (West 2002 & Supp. 2013); 38 C.F.R. § 3.344 (2012).

4. The criteria for a disability rating in excess of 20 percent for a left knee disability prior to June 30, 2011; and in excess of 10 percent since June 30, 2011 have not been met. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 3.321(b) (1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5257, 5260 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Veterans Assistance Act of 2000

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012).

Duty to Notify

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b) (1); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

Here, regarding the increased rating claims, the Veteran was sent a letter in November 2007 that fully addressed all notice elements and was issued prior to the initial RO decision for the claims discussed herein. The letter provided information as to what evidence was required to substantiate the claim and of the division of responsibilities between VA and a claimant in developing an appeal. 

The Board acknowledges that, in the present case, VCAA notice did not directly address the issue of a rating reduction. However, as the instant decision restores the previously assigned rating, any notice deficiency as to this issue is moot.

Duty to Assist

Next, VA has a duty to assist the Veteran in the development of the claims. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims folder contains the Veteran's service personnel and treatment records, as well as all identified and available post-service treatment records, and Social Security Administration (SSA) disability benefits records have been associated with the claims file. The Board has also carefully reviewed the Veteran's written statements and concludes that no available outstanding evidence has been identified. A review of Virtual VA does not reveal any additional documents pertinent to the present appeal.

Also, the Veteran was afforded VA examinations, most recently in September 2012, to evaluate the severity of his bilateral knee disabilities. The Board finds that the VA examinations are adequate because, as shown below, they were based upon consideration of the pertinent medical history, the Veteran's lay assertions and current complaints, and because they describe the bilateral knee disabilities symptomatology in detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). Furthermore, the Veteran has not asserted, and the evidence does not show, that bilateral knee disabilities symptoms have materially increased in severity since the most recent evaluation. See 38 C.F.R. §§ 3.326, 3.327 (reexaminations will be requested whenever VA determines there is a need to verify the current severity of a disability, such as when the evidence indicates there has been a material change in a disability or that the current rating may be incorrect.); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). The Board accordingly finds no reason to remand for further examination.

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001). 

II. Criteria

a. Rating Reductions

A reduction in the evaluation of a service-connected disability is allowed when warranted by the evidence but only after following certain procedural guidelines. 38 C.F.R. § 3.105(e). First, there must be a rating action proposing the reduction, and the Veteran must be given 60 days to submit additional evidence and to request a predetermination hearing. If a hearing is not requested, and reduction is considered to be still warranted, a rating action will be taken to effectuate the reduction. 38 C.F.R. § 3.105(e), (I) (2). The effective date of the reduction will be the last day of the month in which a 60 day period from the date of notice to the Veteran of the final action expires. 38 C.F.R. § 3.105(e), (I) (2) (I).

Prior to the reduction, the Veteran's 20 percent disability rating for a left knee disorder had been in effect from November 12, 2002, a period of more than five years. As a result, the provisions of 38 C.F.R. § 3.344(a) and (b), governing the circumstances in which rating reductions are proper to apply. 

Congress has provided that a Veteran's disability will not be reduced unless an improvement in the disability is shown to have occurred. 38 U.S.C.A. § 1155. In cases where a rating has been in effect for 5 years or more, the rating agency must make reasonably certain that the improvement will be maintained under the conditions of ordinary life even if material improvement in the physical or mental condition is clearly reflected. Kitchens v. Brown, 7 Vet. App. 320, 324 (1995). Moreover, a rating that has been in effect for 5 years or more may not be reduced on the basis of only one examination in cases where the disability is the result of a disease subject to periodic or episodic improvement such as with knee disabilities. 38 C.F.R. § 3.344(a). 

In Brown v. Brown, 5 Vet. App. 413 (1993), the Court of Appeals for Veterans Claims (Court) identified general regulatory requirements that are applicable to all rating reductions. Id., 5 Vet. App. at 417. Pursuant to 38 C.F.R. § 4.1, it is essential, both in the examination and in the evaluation of the disability, that each disability be viewed in relation to its history. Id., 5 Vet. App at 420. Similarly, 38 C.F.R. § 4.2 , establishes that "[i]t is the responsibility of the rating specialist to interpret reports of examination in light of the whole record history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of the disability present." Id. The Court has held that these provisions "impose a clear requirement" that rating reductions be based on the entire history of a Veteran's disability. Id. 

Furthermore, per 38 C.F.R. § 4.13, the rating agency should assure itself that there has been an actual change in the condition, for better or worse, and not merely a difference in the thoroughness of the examination or in use of descriptive terms. Additionally, in any rating reduction case, not only must it be determined that an improvement in a disability has actually occurred, but that such improvement reflects improvement in ability to function under ordinary conditions of life and work. See Brown v. Brown, 5 Vet. App. at 420-421; see also 38 C.F.R. §§ 4.2, 4.10; 38 C.F.R. 3.344(c). A claim as to whether a rating reduction was proper must be resolved in the Veteran's favor unless VA concludes that a fair preponderance of evidence weighs against the claim. Brown, 5 Vet. App. at 421.

b. Increased ratings 

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). Here, the disability pictures relative to the Veteran's knee disabilities appear to have been largely consistent across the appeals period and staged ratings are not warranted.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 must be considered. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45. 

At present, the Veteran's right knee is rated under Diagnostic Code 5055, which assigns a minimum 30 percent rating for a knee replacement (prosthesis) with intermediate degrees of residual weakness, pain, or limitation of motion rated by analogy to diagnostic codes 5256, 5261, or 5262. The criteria for a 60 percent rating are chronic residuals consisting of severe painful motion or weakness in the affected extremity. A 100 percent rating is in effect for 1 year following prosthetic replacement of the knee joint. Diagnostic Code 5055

Loss of motion in the knees may be rated under Diagnostic Codes 5260 (limitation of flexion) and 5261 (limitation of extension). In addition, where the limitation of motion due to pain is not sufficiently severe to be assigned a compensable rating under Diagnostic Codes 5260 or 5261, a 10 percent disability rating may be assigned under Diagnostic Code 5003 for degenerative arthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. A 10 percent disability rating based on X-ray findings will not be combined with ratings based on limitation of motion. See 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1).

Under Diagnostic Code 5260, limitation of flexion to 60 degrees is rated as 0 percent disabling; flexion limited to 45 degrees is 10 percent disabling; flexion to 30 degrees is rated as 20 percent disabling and flexion limited to 15 degrees is 30 percent disabling 

Under Diagnostic Code 5261, extension limited to 10 degrees is 10 percent disabling, extension limited to 15 degrees is 20 percent disabling. Separate ratings may be assigned for limitation of flexion and extension. 

Other Diagnostic Codes which must be considered with respect to knee disabilities are Diagnostic Codes 5256 (ankylosis of the knee), 5258 (dislocated semilunar cartilage), and 5259 (removal of semilunar cartilage). As none of these conditions are shown in this case, these Diagnostic Codes are not applicable here. 

III. Right Knee Disorder
 
At a December 2007 VA examination, the Veteran reported injuring his right knee in service. He had two right knee surgeries over ten years and reported increased right knee pain. He walked with a good gait and without a pelvic tilt or a limp. He used no assistive devices. The right knee was approximately 11/2 times larger than the left knee. There was a strong suggestion of fluid in the knee. There was a palpable well healed scar on the lateral aspect, right. The right knee could be fully extended and flexion was to 140 degrees, with six times repetition with no pain, weakness, fatigue, or lack of endurance. The test was repeated with a two pound weight attached to the right knee with the same results. The lateral or medial ligaments and anterior and posterior cruciate ligaments were tight. Slide test was negative. 

The examiner summarized that the Veteran's usual occupation as a handyman was not at all compromised. Routine daily activities were not at all affected. The right knee joint had discomfort but was stable. There was no history of flare-ups. For all evaluation purposes there was no apparent functional impairment. The diagnosis was status post meniscectomy, right knee.

October 21, 2008 VAMC treatment records reveal that the Veteran underwent a TKA, right knee. 

By rating action in November 2008 the Veteran was assigned a temporary 100 percent post surgery rating from December 1, 2008 to December 1, 2009, at which time a 30 percent rating for a right knee replacement took effect.

In a November 2009 VA examination, the Veteran walked from the waiting room with a slight limp. He used a cane but was not very dependent as he had a good gait, considering his status post TKA. The Veteran complained of pain in his right knee from the area of the joint space. The right knee appeared swollen, but there was no palpable fluid. The medial collateral ligaments were tight. There was good strength resistance in flexion and extension. The knee could be fully extended four times with no pain, weakness, fatigue, or lack of endurance. Flexion was from 0 to 120 degrees 4 times. There was no pain noted throughout. There was no increase in pain on repetitive motion. The joint function and the prosthesis were stable. There did not appear to be any apparent functional impairment. 

The Veteran was then unemployed but had previous jobs in law enforcement and construction. Routine daily activities were not affected by the knee disability. The diagnosis was normal right knee examination with no functional impairment.

At a March 2011 VA examination, flexion was to 120 degrees with extension to 0 degrees with evidence of pain. The test was repeated 3 times without loss of motion due to pain, weakness, fatigue, or lack of endurance.

At a September 2012 VA general examination, the Veteran reported that his right knee locked. He reported flare-ups occurring weekly if not every day with intense pain that bring him to "tears." He walked with a cane and an antalgic gait and uses a walker on occasion. 

Examination of the right knee revealed flexion to 100 degrees with pain. Extension was to 0 degrees with no objective evidence of pain. The Veteran was able to perform repetitive testing 3 times. Post repetitive testing flexion of the right knee was reduced to 95 degrees; and, extension was to 0 degrees. The examiner noted that the Veteran exhibited additional loss, impairment and ROM after repetitive use due to less movement than normal, weakness, pain. swelling, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. There was tenderness to palpation, bilaterally. Knee strength was 4/5 bilaterally. X-rays revealed right knee prosthesis in position. Bony structured appeared intact. There was dystrophic soft tissue calcification above the patella. The examiner noted the Veteran had a right TKA that caused intermediate degree of residual weakness, pain or limitation of motion, and a residual scar.

The examiner opined the Veteran's knees prevented him from working. He was prevented from obtaining and securing gainful employment both physical and sedentary. He was not able to walk, sit, or stand more than 10 minutes due to pain and discomfort.

Analysis

After a review of the claims file, including the medical evidence and history set forth above, the Board finds no support for a rating in excess of 30 percent for the right knee prior to October 21, 2008. 

Except for the period from December 1, 2008 to December 1, 2009, when the Veteran was assigned a temporary 100 percent rating for convalescence after his TKA, right knee, the currently assigned 30 percent disability rating for the right knee based on a prosthetic replacement of the right knee joint with intermediate degree of residual weakness, pain, and limitation of motion best approximates his disability picture.

For the time period prior to October 21, 2008 the symptoms presented did not warrant a rating in excess of the 30 percent assigned under any of the available rating criteria. The Veteran was rated at the maximum allowable evaluation of 30 percent for limitation of flexion. Higher ratings were available for ankylosis of the right knee and for tibia and fibia impairment, as well as for limitation of extension. However, the Veteran did not exhibit any of these conditions so ratings under Diagnostic Codes 5256, 5262, and 5261 are not applicable. In fact during this period, right knee flexion and extension were full with no loss of motion upon repetition due to pain, weakness, fatigue, or lack of endurance, or any functional impairment. This would equate to a 10 percent rating under Diagnostic Code 5003 based on painful motion and X-ray findings. The Board has also noted that the 30 percent rating for the right knee based on painful motion and severe right knee impairment prior to October 21, 2008 was effective from July 14, 1994. The disability rating had remained in effect for more than 10 years and, thus, was protected under 38 U.S.C.A. § 1159. 

The Board also recognizes that separate ratings may be assigned for a knee disability under Diagnostic Codes 5257 and 5010 (for arthritis due to trauma) where there is X-ray evidence of arthritis, in addition to recurrent subluxation or lateral instability, but only if there is additional disability due to limitation of motion. See VAOPGCPREC 23-97 and VAOPGCREC 9-98. In this case, at his November 2011 hearing, the Veteran discussed his knee instability, but this concerned the left knee and not the right knee currently under consideration. His February 2011 DRO hearing testimony similarly did not mention right knee instability. No other evidence, as detailed above, indicates right knee instability, to include on objective testing. Thus, assignment of a separate rating under Diagnostic Code 5257 is not for application here. 

Additionally, VA's General Counsel has determined that separate disability ratings may be assigned for limitation of flexion and extension of the same joint. VAOPGCPREC 09-2004 (September 17, 2004). Specifically, where a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. In this case, however, as already discussed, there is no loss of extension and thus a separate rating on this basis does not apply here. 

In sum, the Board finds that prior to October 21, 2008 the right knee was appropriately rated as 30 percent disabling based on the arthritic component of the knee disability. Moreover, assignment of a separate rating due to instability is not warranted.

For the time period from December 1, 2009 (following the termination of the temporary total rating) the symptoms and disability pictures presented with respect to the right knee did not warrant a rating greater than the 30 percent assigned under any of the available rating criteria. Indeed, there was no evidence of more than an intermediate degree of residual weakness, pain or LOM due to the TKA. There was no ankylosis, limitation of extension, or tibia and fibula impairment. 

In the November 2009 VA examination, the Veteran had full extension and flexion without pain. The diagnosis was normal right knee examination with no functional impairment.

In the March 2011 VA examination, flexion was to 120 degrees with extension to 0 degrees with evidence of pain. 

In the September 2012 VA examination flexion was to 100 degrees with pain, and extension was to 0 degrees with no objective evidence of pain. After repetitive testing flexion was to 95 degrees; and, extension was to 0 degrees. The examiner noted the Veteran's right TKA caused an intermediate degree of residual weakness, pain or limitation of motion. 

After June 30, 2011, there was no evidence of more than intermediate residual weakness, pain, and limitation as a result of the prosthetic right knee replacement. There was no evidence of ankylosis, tibia or fibula impairment with nonunion or loose motion, or evidence of extension limited to more than 20 degrees. In fact, during this period, right knee flexion was to 100 degrees with pain, and extension was to 0 degrees with no objective evidence of pain. After repetitive testing flexion was to 95 degrees; and, extension was to 0 degrees. The Board finds that after June 30, 2011, the right knee was appropriately rated as 30 percent disabling based on intermediate residual weakness, pain, and limitation as a result of the prosthetic right knee replacement. This is the minimum rating for a prosthetic knee replacement.

In reviewing all of the medical evidence throughout the appeals period, there has never been a point at which the disability picture for the right knee has met or approximated that of a 40 percent disability rating under any applicable rating criteria prior to or after June 30, 2011 during the appeal period. In short, the preponderance of the evidence set forth above is against the Veteran's appeal for a higher disability rating for the right knee at any time during the rating period. Additionally, as previously explained, assignment of a separate evaluation contemplating instability is not warranted here. Similarly, the criteria for assignment of separate ratings for both loss of flexion and extension have not been met. See VAOPGCPREC 09-2004 (September 17, 2004). 

In sum, there is no basis for either an increased rating or assignment of a separate rating for any manifestion associated with the Veteran's right knee disability. As such, the benefit-of-the-doubt standard of proof does not apply here. 38 U.S.C.A. § 5107(b).

IV. Left Knee Disorder

By rating action in January 2008, the 20 percent rating for a left knee disability were confirmed and continued by the RO. The current appeal ensued.

By rating action in December 2010 a reduction to 10 percent was proposed for the left knee disability. Subsequently, by rating action in March 2011, the 20 percent rating was reduced to 10 percent effective from July 1, 2011.

Given the above, the issue on appeal requires a review of the evidence relative to the disability from the November 12, 2002 effective date throughout the history of the claim.

At a December 2007 VA examination, the Veteran walked with a good gait and without a pelvic tilt or a limp. He used no assistive devices. The left knee could be fully extended from 140 degrees six times with no pain, weakness, fatigue, or lack of endurance. The lateral or medial ligaments and, anterior and posterior cruciate ligaments were tight. Slide test was negative. The left knee joint appeared stable. The examiner summarized that the Veteran's usual occupation as a handyman was not at all compromised. Routine daily activities were not at all affected. There was no pain on movement and there was no history of flare-ups. For all evaluation purposes there was no apparent functional impairment. The diagnosis was a normal left knee.

In an October 2010 VA examination, the Veteran walked from the waiting room with a slight limp. His gait was consistent with a right knee TKA. His posture was good and he was able to remove his trousers without difficulty. Examination of the left knee revealed no palpable fluid or tenderness. The left knee could be fully extended 4 times without pain, weakness, fatigue, or lack of endurance. With a two pound weight, the knee could be fully extended 3 times without pain, weakness, fatigue, or lack of endurance. Flexion was full to 130 degrees 4 times without pain, weakness, fatigue, or lack of endurance. The medial collateral ligaments and, anterior and posterior cruciate ligaments were tight. Slide test was negative. There was good strength resisting flexion and extension. 

The examiner noted that the claims file was reviewed. The Veteran complained of pain in the left upper thigh but it was clearly unrelated to the left knee. He used no assistive devices for the left knee. He was currently unemployed since the right knee TKA. Routine daily activities were not at all affected. There was no increase in pain on repetitive motion, and no history of flare ups. The left knee appeared stable.

At a March 2011 VA examination, the claims file and medical records were reviewed. The Veteran walked with a normal gait. He reported pain, giving way, stiffness, decreased speed, locking 1-3 times a month. There was tenderness along the medial joint line, guarding, and crepitus of the left knee. There was no mass behind the knee, clicks or snaps, grinding, instability, patellar or meniscus abnormality, tendon, bursa, or other knee abnormality. Flexion was to 105 degrees with extension to 0 degrees with evidence of pain with 3 times without loss of motion due to pain, weakness, fatigue, or lack of endurance. X-rays revealed mild tricompartmental degenerative changes with marginal spurring left knee. 

The Veteran had been unemployed for the past 2 to 5 years. He reported being on SSDI as a result of his bilateral knee disabilities. The Board notes that the file contains an August 2006 SSA determination showing that he was disabled as of December 2005 due to hepatitis and substance abuse. The examiner noted that the Veteran's left knee did not additionally affect his ability to work as he was not currently employed. Affects on his activities of daily living mild for recreation; moderate for exercise; and, severe for sports.

At a September 2012 VA general examination, the claims file and medical records were reviewed. The Veteran walked with a cane and an antalgic gait. He reported that his left knee gave way. He reported flare-ups occurring weekly if not every day. He had intense pain. 

Examination of the left knee revealed flexion to 100 degrees with pain. Extension was to 0 degrees with no objective evidence of pain. The Veteran was able to perform repetitive testing 3 times. Post repetitive testing flexion of the left knees was to 95 degrees; and, extension was to 0 degrees. The Veteran exhibited additional loss, impairment and ROM after repetitive use due to less movement than normal, weakness, pain. swelling, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. There was tenderness to palpation. Left knee strength was 4/5.

X-rays revealed the left knee bony structure appeared intact with knee articulation fairly well maintained. An MRI revealed moderate osteoarthritic changes involving the knee joint.

Analysis

a. Propriety of the reduction

Applying the facts in this case to the criteria for rating reductions set forth above, the Board finds that the proper procedural steps were followed in implementing the reduction. The Veteran was provided with proper advance notice of the proposed reduction and an opportunity to present evidence and testimony opposing the reduction. (Rating action in December 2010 proposed a reduction to 10 percent for the left knee). A February 2011 pre-reduction hearing was held by a DRO at the RO. The effective date of the reduction was properly calculated as occurring after 60 days following the rating action in March 2011, the rating reduction to 10 percent was effective from July 1, 2011. In addition, the requirements of 38 C.F.R. § 3.344 were met, in that the decision to reduce the assigned disability rating was made after multiple VA examinations of the Veteran's left knee. (December 2007, October 2010, and March 2011 VA examinations)

Again, there was no procedural defect with respect to the reduction in this case. 
However, the Board also finds that the record, when viewed in its totality, failed to show sustained improvement of the right knee and that, accordingly, restoration of the 20 percent rating is appropriate. 

Prior to the Veteran's October 2007 request for an increased rating, a March 2003 VA examination indicated left knee flexion to 100 degrees. Upon examination in December 2007, flexion was full, to 140 degrees. Thus, improvement was demonstrated. However, the critical inquiry is whether such improvement can be maintained under the ordinary conditions of life. Kitchens, 7 Vet. App. 320, 324 (1995). Here, the next VA examination in October 2010 showed flexion to 130 degrees, which decreased again to 105 degrees at a March 2011 examination. By September 2012, left knee flexion was 100 degrees, with pain. Thus, the initial improvement shown in 2007 decreased with each successive examination and, eventually, flexion was no better than it had been in 2003. Therefore, there is some question in this case as to whether the initial improvement that prompted the reduction was truly sustained- the decline in flexion was somewhat gradual but also was consistently declining with each examination. Resolving doubt in the Veteran's favor, the Board finds that sustained improvement has not been demonstrated and that the 20 percent evaluation should be restored for the period beginning July 1, 2011. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


b. Increased ratings

After a review of the Veteran's claims file, including the medical evidence and history set forth above, the Board finds that the 20 percent disabling rating assigned for the left knee based on painful motion or limitation of motion is appropriate. A higher disability rating for limitation of motion is not warranted. While the Veteran's specific symptoms and limitations of motion have varied throughout the appeals period, there has not been any point prior to June 30, 2011 during which a 30 percent disability rating under any rating criteria or Diagnostic Code has been appropriate. Likewise there has not been any point after June 30, 2011 during which a 20 percent disability rating under any rating criteria or Diagnostic Code has been appropriate.

Specifically, the Board notes that throughout the appeals period, the disability picture with respect to the left knees has largely been one of minimal limitation of motion due to pain. 

At the December 2007 VA examination, left flexion was to 140 degrees with extension to 0 degrees with no loss of motion upon repetition due to pain, weakness, fatigue, or lack of endurance. The diagnosis was a normal left knee.

At the October 2010 VA examination, left knee could be fully extended with no loss of motion upon repetition due to pain, weakness, fatigue, or lack of endurance. The left knee appeared stable.

At the March 2011 VA examination, left knee flexion was to 105 degrees with extension to 0 degrees with evidence of pain. Repetition 3 times was without loss of motion due to pain, weakness, fatigue, or lack of endurance. The diagnosis was left knee, DJD.

At the September 2012 VA general examination, left knee flexion was to 100 degrees with extension to 0 degrees with no objective evidence of pain. The Veteran was able to perform repetitive testing 3 times. Post repetitive testing flexion of the left knees was to 95 degrees; and, extension was to 0 degrees. 

Again, at all times during the rating period on appeal, the Veteran's left knee symptoms did not warrant a rating in excess of the 20 percent assigned under any of the available rating criteria. Indeed, there was no evidence of more than moderate knee impairment shown; there was no evidence of flexion limited to less than 30 degrees, or extension limited to more than 15 degrees, nor was there any tibula or fibula impairment with more than moderate knee disability. 

In sum, in reviewing all of the medical evidence throughout the appeals period, there has never been a point at which the disability picture for the left knee has met or approximated that of a 30 percent disability rating under any applicable rating criteria prior to June 30, 2011; or a 20 percent disability rating under any applicable rating criteria after June 30, 2011. That is, under Diagnostic Code 5260, the Veteran has never demonstrated limitation of flexion to 15 degrees or less prior to June 30, 2011; or, 30 degrees or less after June 30, 2011 in the left knee, and under Diagnostic Code 5261 he has never demonstrated limitation of extension to 5 degrees. 

The Board also recognizes that separate ratings may be assigned for a knee disability under Diagnostic Codes 5257 and 5010 (for arthritis due to trauma) where there is X-ray evidence of arthritis, in addition to recurrent subluxation or lateral instability, but only if there is additional disability due to limitation of motion. See VAOPGCPREC 23-97 and VAOPGCREC 9-98. In this case, at his November 2011 hearing, the Veteran reported some instances of his left knee giving away 5 to 6 times a day, prior to his knee replacement. He is competent to report such observable symptomatology. However, the examination reports consistently reflect normal joint stability throughout the period in question. It would be appear that if the Veteran were experiencing an episode of knee instability essentially every four hours that this would be detectable upon specific examination designed to identify instability. Therefore, the Board places greater weight on the objective findings than on the lay evidence, which is of questionable credibility on this point. Thus, assignment of a separate rating under Diagnostic Code 5257 is not for application here. 

Additionally, VA's General Counsel has determined that separate disability ratings may be assigned for limitation of flexion and extension of the same joint. VAOPGCPREC 09-2004 (September 17, 2004). Specifically, where a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. In this case, however, as already discussed, there is no loss of extension and thus a separate rating on this basis does not apply here. 

In sum, there is no basis for either an increased rating or assignment of a separate rating for any manifestion associated with the Veteran's left knee disability. As such, the benefit-of-the-doubt standard of proof does not apply here. 38 U.S.C.A. § 5107(b).

V. Extraschedular Rating

Although the Board is precluded by regulation from assigning extraschedular ratings under 38 C.F.R. § 3.321 (b) (1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation and Pension Service.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for a service-connected disability is inadequate. There must be a comparison between the level of severity and symptomatology of the service-connected disability with the established criteria.

If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111 (2008).

Here, the rating criteria reasonably describe the Veteran's disability levels and symptomatology related to his left and right knee disorders, and provide for higher ratings for more severe symptoms. As the disability pictures are contemplated by the Rating Schedule, the assigned schedular ratings are, therefore, adequate. Consequently, an additional referral for extraschedular consideration at this time is not required under 38 C.F.R. § 3.321(b) (1).


ORDER

Entitlement to a disability rating in excess of 30 percent for a right knee disability, described as PO meniscectomy with traumatic arthritis, excluding a period of TTR from October 21, 2008 to December 1, 2009, is denied.

The reduction of the 20 percent disability rating for a left knee disorder was not proper, and restoration of the 20 percent disability rating from July 1, 2011 is granted.

Entitlement to a disability rating higher than 20 percent for a left knee disability is denied.



____________________________________________
Eric S. Leboff
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs