Citation Nr: 1825333 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 14-33 534 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to a rating in excess of 20 percent for femoral head stress fracture of the right hip, to include whether the reduction from a 20 percent to 10 percent rating, effective September 1, 2014, was proper. 

2. Entitlement to a rating in excess of 10 percent for femoral head stress fracture of the left hip, to include whether the reduction from 10 percent to noncompensable rating, effective December 1, 2014, was proper. 

3. Entitlement to a compensable rating for the scar of the right hip. 

4. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

S. Keyvan, Counsel


INTRODUCTION

The Veteran had active service from July 2008 to August 2009. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from the November 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. The Veteran filed a notice of disagreement (NOD) with this decision in December 2012 and perfected a timely appeal of this decision in September 2014. 

In his September 2014 substantive appeal, the Veteran requested, and was scheduled for, a videoconference hearing before the undersigned in November 2017. However, he failed to report to his scheduled hearing and did not provide good cause for his failure to report. In addition, the Veteran did not give prior notice that he would not attend his hearing. Although it appears that the Veteran, through his representative, has requested another videoconference hearing before a Veterans Law Judge (see February 2018 Appellate Brief), he did not provide good cause for his prior failure to report. Accordingly, the Board must deny the request for a Board hearing. 

The Veteran contends that he is unemployable in part due to his service-connected hip disabilities. See June 2015 Application for Increased Compensation Based on Unemployability. The Veteran's TDIU claim was denied in the December 2015 rating decision, and he did not file a NOD with that decision. Nevertheless, when evidence of unemployability is submitted during the course of an appeal from an assigned disability rating, a claim for entitlement to a TDIU will be considered to have been raised by the record as "part and parcel" of the underlying claim. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). As the Veteran asserts that he is unemployable due to the disabilities currently on appeal, the issue of a TDIU is before the Board.

The issues of entitlement to a rating in excess of 20 percent for femoral head stress fracture of the right hip, entitlement to a rating in excess of 10 percent for femoral head stress fracture of the left hip, and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. By way of the February 2010 rating decision, the AOJ granted service connection for femoral head stress fracture, right hip, and awarded a 20 percent disability rating for this disorder, effective from August 22, 2009. The AOJ also granted service connection for femoral head stress fracture, left hip, and awarded a 10 percent disability for this disorder, effective from August 22, 2009. 

2. By way of the June 2014 rating decision, the AOJ reduced the disability rating for the Veteran's service-connected femoral head stress fracture, right hip, from 20 percent to 10 percent disabling, effective September 1, 2014. 

3. By way of the September 2014 rating decision, the AOJ reduced the disability rating for the Veteran's service-connected femoral head stress fracture, left hip, from 10 percent to noncompensably disabling, effective December 1, 2014. 

4. There was not a showing of improvement in the service-connected femoral head stress fracture of the right and left hips under the ordinary conditions of life and work, for any period from August 22, 2009 to December 1, 2014.

5. The residual right hip scar is superficial and neither painful, tender nor unstable; the scar does not result in any limitation of motion or loss of function and the area of the scar is less than 6 square inches. 


CONCLUSIONS OF LAW

1. The reduction of the assigned rating from 20 percent to 10 percent for the service-connected femoral head stress fracture, right hip, was not proper; and the 20 percent rating for this disability is restored, effective from August 22, 2009. 38 U.S.C. §§ 1154 (a), 1155, 5107(b) (2012); 38 C.F.R. §§ 3.105, 3.344, 4.1, 4.25 (2017).

2. The reduction of the assigned rating from 10 percent to 0 percent for the service-connected femoral head stress fracture, left hip, was not proper; and the 10 percent rating for this disability is restored, effective from August 22, 2009. 38 U.S.C. §§ 1154 (a), 1155, 5107(b) (2012); 38 C.F.R. §§ 3.105, 3.344, 4.1, 4.25 (2017).

3. The criteria for a compensable rating for a scar on the right hip have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.118, Diagnostic Codes 7801- 7805 (2017).

 38 C.F.R
REASONS AND BASES FOR FINDINGS AND CONCLUSION

Reduced Rating

A veteran's disability rating shall not be reduced unless an improvement in the disability is shown to have occurred. 38 U.S.C. § 1155; Greyzck v. West, 12 Vet. App. 288, 292 (1999). Where a reduction in an evaluation of a service-connected disability is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance must be prepared setting forth all material facts and reasons, and the RO must notify the veteran that he has 60 days to present additional evidence showing that compensation should be continued at the present level. The veteran is also to be informed that he may request a predetermination hearing, provided that the request is received by VA within 30 days from the date of the notice. If no additional evidence is received within the 60 day period and no hearing is requested, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the veteran expires. 38 C.F.R. § 3.105 (e).

However, VA's General Counsel has held that 38 C.F.R. § 3.105 (e) does not apply where there is no reduction in the amount of compensation payable. It is only applicable where there is both a reduction in evaluation and a reduction or discontinuance of compensation payable. Therefore, where the evaluation of a specific disability is reduced, but the amount of compensation is not reduced because of a simultaneous increase in the evaluation of one or more other disabilities, section 3.105(e) is not applicable. See VAOPGCPREC 71-91 (Nov. 1991); Stelzel v. Mansfield, 508 F.3d 1345, 1347-49 (Fed. Cir. 2007) (holding that provisions of section 3.105(e) do not apply when there is no change in the overall disability rating).

In the February 2010 rating decision, the AOJ granted service connection for femoral head stress fracture, right hip, and evaluated it as 20 percent disabling, effective August 22, 2009 (the date after the Veteran's release from military service.) The AOJ also granted service connection for femoral head stress fracture of the left hip, and evaluated it as 10 percent disabling, effective August 22, 2009. In addition, the AOJ granted service connection for scar, right hip, and evaluated it as noncompensably disabling, effective August 22, 2009. 

The Veteran filed a claim seeking a higher rating for his service-connected disabilities in December 2011. In the November 2012 rating decision, the AOJ continued the 20 percent disability rating for femoral head stress fracture of the right hip, and further continued the 10 percent disability rating for femoral head stress fracture of left hip. The Veteran submitted a NOD with these disability ratings in December 2012. Following the November 2013 VA bilateral hip examination, in the December 2013 rating decision, the AOJ proposed to reduce the disability rating for the Veteran's femoral head stress fracture, right hip, from 20 percent to 10 percent disabling. The Veteran was afforded another VA examination in connection to his bilateral hip disability in April 2014, and following this examination, in the June 2014 rating decision, the AOJ reduced the disability rating for the Veteran's femoral head stress fracture right hip, from 20 percent disabling to 10 percent disabling, effective from September 1, 2014. In this decision, the AOJ also proposed to reduce the disability rating for the Veteran's femoral head stress fracture, left hip, from 10 percent to noncompensably disabling. The Veteran received notice of the reduction in the disability rating for his right hip disorder, and the proposed reduced rating for the left hip disorder in a June 2014 notice letter. In the September 2014 rating decision, the AOJ reduced the disability rating for the Veteran's femoral head stress fracture, left hip, from 10 percent to noncompensably disabling, effective December 1, 2014. The Veteran was informed of the reduction in the disability rating for his left hip disorder in the September 2014 notice letter. 

In certain rating reduction cases, such as this case, VA benefits recipients are to be afforded greater protections, as set forth in 38 C.F.R. § 3.344 (a) and (b). These provisions provide that rating agencies will handle cases affected by change of medical findings so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. Under 38 C.F.R. § 3.344 (a) and (b), VA must find the following before reducing a rating: (1) based on a review of the entire record, the examination forming the basis for the reduction is full and complete, and at least as full and complete as the examination upon which the rating was originally based; (2) the record clearly reflects a finding of material improvement; and, (3) it is reasonably certain that the material improvement found will be maintained under the ordinary conditions of life. See Kitchens v. Brown, 7 Vet. App. 320 (1995); Brown v. Brown, 5 Vet. App. 413 (1993). In this regard, there must be actual improvement in the disability, not just a failure to meet the requirements of a rating under the currently assigned Diagnostic Code. In addition, the provisions of 38 C.F.R. § 3.344 (c) specify that these considerations are required for ratings that have continued for long periods at the same level (five years or more), and that they do not apply to disabilities which have not become stabilized and are likely to improve. Only re-examinations that demonstrate clear improvement in these disabilities will warrant a reduction in rating.

However, in any rating-reduction case, not only must it be determined that an improvement in a disability has actually occurred but also that that improvement actually reflects an improvement in the Veteran's ability to function under the ordinary conditions of life and work. See Faust v. West, 13 Vet. App. 342, 350 (2000).

Where a rating reduction was made without observance of law, the reduction must be vacated and the prior rating restored. Schafrath, 1 Vet. App. at 595. In considering the propriety of a reduction, the Board must focus on the evidence available to the RO at the time the reduction was effectuated (although post-reduction medical evidence may be considered in the context of considering whether actual improvement was demonstrated). Dofflemyer v. Derwinski, 2 Vet. App. 277 (1992). The Veteran need not demonstrate that he is entitled to retain the higher evaluation; rather, it must be shown by a preponderance of the evidence that the RO's reduction was warranted. See Brown v. Brown, 5 Vet. App. 413 (1993), Kitchens, 7 Vet. App. 320 (1995).

In this case, the Veteran's 20 percent rating for his femoral head stress fracture, right hip, was in effect from August 22, 2009 to September 1, 2014. In addition, the Veteran's 10 percent rating for his femoral head stress fracture, left hip, was in effect from August 22, 2009 to December 1, 2014. Since both these periods are five years, the provisions under 38 C.F.R. § 3.344 (a) and (b) regarding stabilization of disability ratings are applicable.

VA treatment records dated in 2008 reflect that the Veteran was diagnosed with having a stress fracture of the right femoral neck, and mild focal stress change versus early stress fracture of the left femoral neck. He underwent a closed reduction percutaneous screw fixation procedure for the right hip femoral neck stress fracture in November 2008. The operative records reflect that bone scans of the left hip demonstrated mild compression side uptake, and a magnetic resonance imaging (MRI) of the left hip demonstrated increased signal with interosseous bone edema in the region of the calcar without evidence of clear fracture line. The computed tomography (CT) of the right hip revealed clear evidence of a fracture line along the tension side calcar of the right femoral neck that was confirmed by the MRI scan. 

The Veteran was afforded a VA examination in connection to his hip disorders in January 2010. The Veteran reported to experience pain in his right hip region after standing for two hour durations. He also stated that he takes Ibuprofen on an as-needed basis for his pain. On physical examination of the Veteran, the examiner did not observe any bone or joint abnormalities, but did note that the Veteran's weight-bearing joint had been affected. The Veteran reported functional limitations when standing, and added that he can only stand for two hours before the pain starts. The examiner observed no functional limitation with respect to the Veteran's ability to walk and further observed no constitutional signs of bone disease. The examiner described the Veteran's gait as normal, and noted that he can walk on his toes, heels and along the line. 

Further examination of the right hip reflected that the Veteran had flexion to 120 degrees, extension to 30 degrees, and abduction to 50 degrees with no objective evidence of pain. With respect to the left hip, the Veteran was shown to have flexion to 120 degrees, extension to 30 degrees and abduction to 50 degrees with no objective evidence of pain. Report of the bilateral hip x-ray demonstrated three partially threaded metallic screws transfixing the right proximal femur, with no evidence of acute fracture or dislocation. The hips joints were shown to be maintained, and the left femur was grossly intact with mild narrowing of the lateral femorotibial compartment. The Veteran was diagnosed with having a history of fracture of both femoral heads with no residuals noted on present x-rays except for three screws on the right femur. He was also diagnosed with having status-post surgery on the right femur and arthralgia on the right hip area. The examiner noted that the Veteran's "[c]linically hip movements (ROM) are good" and his only complaint was that of pain in the right hip area after standing for two hour periods. 

The Veteran was thereafter afforded another VA examination in connection to these claims in November 2013. During this examination, the Veteran stated that since his last VA examination, and over the course of the last year, he had experienced a popping sensation in the right hip on a frequent basis, and in the left hip on an infrequent basis. He also reported ongoing pain that had increased over time. According to the Veteran, he experiences painful flare-ups and a popping sensation primarily in the right hip whenever he stands or walks for longer than one to two hours. On physical examination, he was shown to have right hip flexion to 120 degrees, with no objective evidence of painful motion. In addition, his extension in the right hip was greater than five degrees, with no objective evidence of painful motion. On physical examination of the left hip, the Veteran was shown to have flexion to 125 degrees or greater, with no objective evidence of painful motion, and extension to greater than 5 degrees, with no objective evidence of painful motion. The examiner also noted that the Veteran had right hip flexion to 120 degrees following repetitive motion, and right hip extension to 5 degrees or greater post-repetitive motion. In addition, the Veteran had post-test flexion to 125 degrees, and post-test extension to 5 degrees or greater in the left hip. Although he (the Veteran) did not have additional limitation of motion of the hip and thigh following repetitive-use testing, he did have functional loss and/or functional impairment of the hip and thigh following repetitive movement, due to the fact that he had less movement than normal in the right hip. Report of the bilateral hip and pelvic x-ray revealed post-surgical changes of the right femoral head and neck, with no acute bone injury. When asked whether the Veteran's hip and/or thigh condition impacts his ability to work, the examiner marked that it did, and noted that the Veteran continued to work but experienced pain if he is on his feet over one to two hours. The examiner did note that since the Veteran reported worsening hip pain, and was not seeing a medical provider for these symptoms, he had advised him to seek treatment and follow-up care at the VA community based outpatient clinic (CBOC) close to his home for his symptoms. 

The Veteran was afforded another VA examination in connection to his bilateral hip condition in April 2014. During the examination, he reported to experience flare-ups of pain, and stated that he does well until he has to stand for eight hour durations in a work environment. He also reports pain in both hip joints whenever he lies on either his right or left side. On physical examination, the Veteran was shown to have right hip flexion to 105 degrees, with objective evidence of painful motion at 95 degrees. The Veteran was also shown to have right hip extension to five degrees or greater with no objective evidence of painful motion. In addition, the Veteran had left hip flexion to 125 degrees or greater, and left hip extension to greater than five degrees, with no objective evidence of painful motion during either range of motion exercise. The examiner further noted that the Veteran had flexion to 105 degrees and extension to 5 degrees or greater following repetitive use testing in the right hip. Additionally, the Veteran had flexion to 125 degrees or greater, and extension to 5 degrees or greater following repetitive motion. The examiner observed that the Veteran did not have additional limitation of motion of the hip and thigh following repetitive motion, but he did have functional loss due to contributing factors such as less movement than normal, weakened movement, and pain on movement. In addition, it was noted that the Veteran had localized tenderness or pain to palpation for joints/soft tissue of either hip. When asked whether the Veteran had any residual signs and/or symptoms due to arthroscopic or other hip surgery, the examiner marked that he did, and noted that the Veteran experienced an intermediate degree of pain, residual weakness or limitation of motion in the right hip. When asked whether the Veteran's hip/thigh condition impacts his ability to work, the examiner marked that it did, but noted that while the Veteran can still work, he cannot partake in heavy physical labor or stand for eight hours a day. 

In this case, although the Veteran was provided VA examinations prior to the reductions in the disability ratings for his hip disorders, in the June 2014 rating decision effectuating the reduction for the right hip disorder, the AOJ based the reduction on the November 2013 and April 2014 VA examinations which reflected that his "condition had improved" and "right hip showed sustained improvement." In the September 2014 rating decision which effectuated the reduction for the left hip disorder, the AOJ relied on the April 2014 VA examination which also appeared to document signs of improvement in the Veteran's symptoms. However, the rating decisions did not reference or cite to the specific medical evidence produced during the examinations that reflected signs of improvement in the Veteran's bilateral hip disorder. Indeed, when comparing the January 2010 VA examination report with the more recent examination report dated in April 2014, the Veteran's range of motion during flexion of the right hip appears to have become more limited throughout the years. Furthermore, while the January 2010 VA examiner described the Veteran's hip movements during range of motion as good, and noted that his only complaint was pain in the right hip area after standing for two hour durations, both the November 2013 and April 2014 documented the Veteran's complaints of worsening pain that occurred on a more frequent basis, and also arose when he lied down on either his right or left side. Moreover, although the procedural protections offered for a stabilized rating under 38 C.F.R. § 3.344 (a) and (b) are applicable in the instant case, neither the November 2013 VA examiner, nor the April 2014 VA examiner, addressed whether any improvement noted in the Veteran's bilateral hip condition represented improvement in his ability to function under the ordinary conditions of life and work. This topic was not discussed during either examination, the June 2014 and September 2014 rating decisions effectuating the reductions, or the August 2014 Statement of the Case (SOC) addressing these issues. 

Indeed, both the November 2013 and April 2014 VA examiners found that the Veteran had functional loss and/or functional impairment of the right hip following repetitive testing, as reflected by the fact that he displayed less movement than normal, weakened movement and pain on movement in the right hip. Although the Veteran's displayed slight improvement in his range of motion in the left hip at the more recent VA examinations, he continued to report increasing pain, a popping sensation, and an aching sensation in the left hip while lying down - complaints he had not expressed at the January 2010 VA examination. Indeed, the Veteran reported worsening pain at the November 2013 VA examination, and the April 2014 VA examiner commented that the Veteran experiences painful flare-ups when he stands all day at work with associated symptoms of pain, weakness, fatigability and probable loss of range of motion during these times. The April 2014 VA examiner also noted that while the Veteran can still work, he can no longer do heavy physical labor or stand for 8 hour durations. As such, contrary to the reasoning relied upon by the AOJ in the June 2014 and September 2014 rating decision, any improvement present in the Veteran's bilateral hip condition does not reflect an improvement in his ability to function under the ordinary conditions of life and work. 

In this regard, the Board finds that the decisions to reduce were not in accordance with the law, in part because the AOJ did not making a finding that it was reasonably certain that any material improvement found in the right and left hips would be maintained under the ordinary conditions of life. 

The record reflects that from the time of the January 2010 VA examination to the time of the April 2014 VA examination, the severity of the Veteran's right and left hip disabilities and associated complications, and the limitations and restrictions he experienced as a result remained the same in the left hip, and in some respects, worsened in the right hip. In light of the Veteran's complaints of worsening pain since his last VA examination, his reported flare-ups with increasing pain, weakness, fatigability and loss of motion after standing for lengthy periods, the reduction in his limitation of motion during flexion of the right hip, and evidence of functional loss following repetitive motion, the Board does not find that the Veteran's femoral head stress fracture of the right and left hip have exhibited actual improvement throughout the pendency of the appeal. Moreover, the evidence of record is unclear as to whether any improvement shown throughout the pendency of the appeal has been consistently maintained under the ordinary conditions of life and work. Further, whether any improvement in the right and left hip disability reflected improvement in the Veteran's ability to function under the ordinary conditions of life and work was not addressed by either examiner, or in the rating decisions effectuating the reductions. 

In reviewing the entirety of the evidence, the Board finds that the weight of the evidence is against a finding of actual improvement in the Veteran's service-connected femoral head stress fracture of the right and left hip. Thus, the Board finds that the reduction from 20 percent to 10 percent for the Veteran's service-connected femoral head stress fracture, right hip, effective from September 1, 2014, and the reduction from 10 percent to 0 percent for the Veteran's femoral head stress fracture of the left hip, effective from December 1, 2014, was improper. Accordingly, the 20 percent disability rating for femoral head stress fracture, left hip, and the 10 percent disability rating for femoral head stress fracture, right hip, are both restored, effective August 22, 2009.

Increased Rating - Right Hip Scar

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

In the February 2010 rating decision, the AOJ granted service connection for the Veteran's residual scar on his right hip, and evaluated it as noncompensably disabling, (effective August 22, 2009) pursuant to 38 C.F.R. § 4.118, Diagnostic Code 7805. The Veteran contends that the symptomatology associated with the service-connected residual scar of the right hip is worse than the disability rating current assigned, and asserts that an increased rating is warranted. 

The Board acknowledges that the criteria for rating scars were revised, effective October 23, 2008. See 73 Fed. Reg. 54,708 (Sept. 23, 2008) (codified at 38 C.F.R. § 4.118, DCs 7800 to 7805). The amendment applies to all applications for benefits received by VA on or after October 23, 2008. See 73 Fed. Reg. 54708 - 54710 (Sept. 23, 2008); see also 38 C.F.R. § 4.118 (2017). Since the Veteran's claim for increased benefits was filed after October 23, 2008, and he was rated under diagnostic code 7805 after October 23, 2008, the Board will consider the rating criteria after October 23, 2008.

Initially, the Board notes that Diagnostic Code 7800 is not applicable here because these criteria evaluate impairment resulting from scars of the head, face, or neck.

Under the rating criteria in effect from October 23, 2008, Diagnostic Code 7801 provides a 10 percent rating for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are deep and nonlinear, and the area of which covers at least 6 square inches but less than 12 square inches. A 20 percent rating is warranted for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are deep and nonlinear, the area of which covers at least 12 square inches but less than 72 square inches. A 30 percent rating is warranted for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are deep and nonlinear, the area of which covers at least 72 square inches but less than 144 square inches. A 40 percent rating is assigned for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are deep and nonlinear, the area of which covers at least 144 square inches or greater. Note (1) to Diagnostic Code 7801 provides that a deep scar is one associated with underlying soft tissue damage. 

Under Diagnostic Code 7802, a 10 percent disability rating is assigned for superficial and non-linear scars affecting a total skin surface area of 144 square inches (929 square centimeters) or greater. 38 C.F.R. § 4.118.

Under the rating criteria effective October 23, 2008, Diagnostic Code 7804 provides a 10 percent rating for one or two scars that are unstable or painful. A 20 percent rating is warranted for three to four scars that are unstable or painful and a 30 percent disability rating is assigned for five or more scars that are unstable or painful. Note (1) states that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provides that if one or more scars are both unstable and painful, an additional 10 percent should be added to the evaluation based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under diagnostic codes 7800, 7801, 7802, or 7805 may also receive an evaluation under this diagnostic code, when applicable. 

Revised Diagnostic Code 7805 provides that other scars (including linear scars) and other effects of scars evaluated under Diagnostic Codes 7800, 7801, 7802, and 7804 require the evaluation of any disabling effect(s) not considered in a rating provided under Diagnostic Codes 7800-7804 under an appropriate Diagnostic Code. 38 C.F.R. § 4.118, Diagnostic Code 7805.
 
At the January 2010 VA examination, the examiner observed a residual vertical scar on the Veteran's right lower extremity, and specifically on the posterolateral region of the leg, that was one inch in length and 0.125 inches in width. The examiner described the scar as non-tender and superficial, and noted that the scar was not painful. The November 2013 VA examiner noted that the Veteran has a residual scar on his right lower extremity as a result of the right hip surgery he underwent in November 2008. When asked whether the scar was painful and/or unstable, or if the total area of all related scars was greater than 39 square centimeters, the examiner marked that it was not. The April 2014 VA examiner did not observe any scars, surgical or otherwise, related to the Veteran's right hip surgery/femoral head stress fracture of the right hip. 

The medical evidence of record is clear for any complaints, or objective evidence, of pain, tenderness, limitation of motion, or limitation of function associated with the Veteran's right hip scar. As noted above, the January 2010 VA examiner noted that the right hip scar was neither painful nor tender, and the November 2013 VA examiner did not observe any evidence of pain associated with the right hip scar. Further, the Veteran has not reported any symptoms attributed to this scar, and has not been shown to have any limitation of motion or limitation of function as a result of his service-connected residual scar. Indeed, neither the Veteran, nor the objective medical findings, suggest that the Veteran's right hip scar results in limitation of function and none of the Veteran's examiners observed any disabling effects associated with his right hip scar. As such, the Veteran is not entitled to a compensable evaluation pursuant to 38 C.F.R. § 4.118, Diagnostic Code 7805. 

The Board has also considered whether a compensable evaluation would be in order under the relevant diagnostic codes. However, the Board finds that the criteria for a compensable rating are simply not met in this case. In this regard, the Veteran's right hip scar has not been described as deep and nonlinear, and there is no indication that the scar is unstable. In addition, the record does not reflect that the area of right hip scar is at least, or exceeds, 6 square (39 sq. cm). As noted above, the January 2010 VA examiner noted that the Veteran's scar was superficial, one inch in length and 0.125 inches in width. As such, it does not meet the criteria for a compensable rating under Diagnostic Code 7801. A compensable rating under Diagnostic Code 7802 for superficial scar requires that the scar cover an area of 144 square inches, which has not been shown. In addition, the Veteran's scar has not been described as unstable or painful, rendering Diagnostic Code 7804 inapplicable. 

Based on the evidence of record, the Board finds that the Veteran is not entitled to a compensable evaluation for his residual right hip scar under Diagnostic Codes 7801, 7802, 7804, and 7805. See 38 C.F.R. § 4.118, Diagnostic Codes 7801-7805 (2017). Accordingly, the Board finds that the preponderance of the evidence is against the claim for a compensable rating for the Veteran's right hip scar. 38 U.S.C. § 5107 (b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board has considered whether referral for an extraschedular rating under 38 C.F.R. § 3.321 (b)(1) is warranted in this case. The Board finds that the Veteran's symptoms associated with the residual right hip scar, are contemplated by the schedular rating criteria. Neither the facts of the case nor the Veteran's allegations raise the issue of extraschedular consideration. Thus, no analysis is required. See Yancy v. McDonald, 27 Vet. App. 484, 494 (2016) (holding that an extraschedular analysis is not warranted where it is not "specifically sought by the claimant nor reasonably raised by the facts found by the Board") (citing Dingess v. Nicholson, 19 Vet. App. 473, 499 (2006), aff'd, 226 Fed. Appx. 1004 (Fed. Cir. 2007). See also Doucette v. Shulkin, 28 Vet. App. 366, 369 (2017) (explaining that the Board had no obligation to analyze whether referral is warranted for extraschedular consideration if an extraschedular rating is not specifically sought by the claimant or reasonably raised by the facts found by the Board).


ORDER

The reduction of the 20 percent disability rating for the femoral head stress fracture, right hip, was improper, and the 20 percent disability rating is restored, effective August 22, 2009; the appeal is granted.

The reduction of the 10 percent disability rating for the femoral head stress fracture, left hip, was improper, and the 10 percent disability rating is restored, effective August 22, 2009; the appeal is granted.

Entitlement to a compensable rating for the right hip scar is denied. 


REMAND

Service-connected Right/Left Hip Disability 

The Veteran contends that his service-connected right and left hip disabilities, are more disabling than currently evaluated. After a review of the claims folder, the Board finds that a remand of the Veteran's rating claims is required to allow for further development of the record. 

A Compensation and Pension Examination Inquiry report reflects that the AOJ most recently initiated a request to schedule the Veteran for a VA examination in connection to his bilateral hip disorder in August 2015. It appears that the Veteran was scheduled for this examination in September 2015. However, a September 2015 Report of General Information form reflects that he (the Veteran) contacted the VA RO and cancelled this examination due to the fact that the location of the examination was three hours away from where he lived, and he did not have a source of reliable transportation. The Veteran requested that his VA examination be rescheduled at a location closer to his residence, and indicated that he would attend the rescheduled VA examination. It appears that the Veteran was rescheduled for another VA examination in December 2015; however, the only copy of the examination report accessible through the electronic paperless system does not appear to have been completed. On remand, the AOJ should determine whether the Veteran was, in fact, afforded a VA examination in connection to his bilateral hip disorder in December 2015, and if so, the AOJ should retrieve a copy of this examination report and associate it with his claims file. 

Prior to the December 2015 VA examination, the Veteran was afforded a VA examination in connection to his bilateral hip disorder in April 2014, and this report has been completed and is accessible throughout the electronic claims file. Subsequent to the April 2014 VA examination, the Court, in Correia v. McDonald, 28 Vet. App. 158 (2016), held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. A review of the claims file reveals that the April 2014 VA hip examination does not specify whether such testing was taken during active or passive motion. In addition, the VA examination report does not specify whether there is evidence of pain during weight-bearing and/or nonweight-bearing activities. Although the examiner noted that the Veteran had functional loss following repetitive movement, as well as painful flare-ups with increased pain, weakness, fatigability and loss of range of motion, he noted that it was impossible to measure or estimate the loss of motion during these times. Unfortunately, the examiner did not provide an explanation as to why loss of motion could not be estimated or determined, nor did he otherwise describe the functional loss. See Sharp v. Shulkin, 29 Vet. App. 26 (2017) (addressing what constitutes an adequate explanation for an examiner's inability to estimate motion loss in terms of degrees during periods of flare-ups).

In light of the fact that these examination reports do not fully satisfy the requirements of Correia v. McDonald, 28 Vet. App. 158 (2016), Sharp and 38 C.F.R. § 4.59, the Veteran should be afforded new VA examinations before a decision can be rendered on his claims.

The Board also finds that the Veteran's claim for a TDIU is inextricably intertwined with the increased rating issues remanded herein. Therefore, adjudication of the TDIU claim would be premature at this juncture. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

Accordingly, the case is REMANDED for the following action:

1. Send a letter to the Veteran at his most recent mailing address of record requesting that he identify all VA and non-VA health care providers, other than those already associated with the Veteran's claims file, that have treated or evaluated him for his service-connected hips disorders. After obtaining the appropriate release of information forms where necessary, procure records of any outstanding treatment for the right and left hip disorders. The Board is particularly interested in records of treatment that the Veteran may have received at any VA facility, including through the VA medical facility in Huntington, West Virginia. In addition, determine whether the Veteran did, in fact, undergo a VA examination in connection to his hip disorders in December 2015, and if so, retrieve a copy of the this examination report and associate it with the claims file. All such available documents should be associated with the claims file.

2. Thereafter, schedule the Veteran for an appropriate VA examination to determine the nature and extent of the service-connected right and left hip disabilities. The examiner must review the claims file in conjunction with the examination. The examiner should describe the nature and severity of all manifestations of the Veteran's right and left hip disabilities. 

In this regard, the examiner should record the range of motion observed on clinical evaluation of each hip, in terms of degrees of flexion, extension, abduction, adduction, and rotation. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain, and the degree at which pain begins during flexion, extension, abduction, adduction and rotation. Then, after reviewing the Veteran's complaints and medical history, the examiner should render an opinion, based upon his or her best medical judgment, as to the extent to which the Veteran experiences functional impairments such as weakness, excess fatigability, incoordination, or pain due to repeated use or flare-ups, and should portray these factors in terms of degrees of additional loss in range of motion (beyond that which is demonstrated clinically), if feasible. If this is not possible, the examiner must provide a rationale for why it is not possible. The examiner should state also whether there is any malunion of the right and left hip and if so, should state whether slight, moderate, or marked knee or hip disability is shown. In addition, the examiner should state whether any favorable, intermediate, or unfavorable ankylosis of the right and left hip is present. In addition, the examiner should note whether there is flail joint of the right and left hip and/or any impairment of the femur and, if so, the severity of such. 

In order to comply with the case of Correia v. McDonald, 28 Vet. App. 158 (2016), the examiner must test the range of motion for both hips in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. 

With regard to flare-ups, if the Veteran is not currently experiencing a flare-up, based on relevant information elicited from the Veteran, review of the file, and the current examination results regarding the frequency, duration, characteristics, severity, and functional loss regarding his flares, the examiner is requested to provide an estimate of the Veteran's functional loss due to flares expressed in terms of the degree of additional range of motion lost, or explain why the examiner cannot do so. If the examiner is unable to estimate functional loss of the hips in terms in terms of degrees after physical examination and eliciting the pertinent information about the flare-ups above, he or she must explain why and may not rely solely upon his or her inability to personally observe the Veteran's during a period of flare-up. See Sharp v. Shulkin, 29 Vet. App. 26 (2017).

The examiner must comment on the functional impairment caused by the Veteran's right and left hip disabilities. The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions. 

3. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims for higher ratings for his service-connected femoral head stress fracture of the right and left hips should be readjudicated, and his claim for entitlement to a TDIU should be adjudicated, based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.


The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs